### CARTEY v. UNITED STATES.*

No. 8209.

Circuit Court of Appeals, Fifth Circuit.

Oct. 29, 1936.

John J. McCreary, of Macon, Ga., for appellant.

T. Hoyt Davis, U. S. Atty., and A. Edward Smith, Asst. U. S. Atty., both of Macon, Ga., for the United States.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Both sides joined in the motion to the District Judge to direct the verdict, and he directed it for the United States. We have only to determine whether the

*Rehearing denied Dec. 12, 1936.

evidence authorizes such a finding of the facts as under the law will support this result. Cartey, the insured soldier, was discharged from the army July 15, 1919, and paid no insurance premium since, so that his insurance lapsed August 1, 1919, unless he was, as is now claimed, totally and permanently disabled before that date. He is shown to have had "fainting spells" in the army and afterwards, but he married, in December after discharge and had a child, and his wife testifies that she never thought anything of the attacks until in 1923 he became unconscious with the symptoms of an epileptic fit. He was then for the first time put under medical care and epilepsy was diagnosed. In 1929 he was rated as partially disabled from June 23, 1923, and paid back compensation. He became steadily worse and died April 6, 1934. The insurance claim was filed as is contended before July 1, 1931, and denied April 3, 1934, on the sole ground that the Economy Act (48 Stat. 8) had repealed all laws about it. The administratrix filed this suit December 22, 1934.

■ There is a question whether it was filed too late, which the District Judge seems to have resolved in favor of the suit. We pass it by because the evidence plainly shows that while it is likely the insured had slight or incipient epilepsy of the idiopathic and incurable type in August, 1919, and might have been partially disabled from work then, he did in fact return to his prewar work as an automobile mechanic and earned wages of $40 per week at it with practical continuity till his attack in 1923, and after that he continued at the work with some interruptions for four years longer. He supported himself, his wife and child. While there is some evidence that he ought to have rested more and sooner, he was not advised by his physicians in 1923, when he first went under treatment, to cease work. Their testimony is that worry or brooding over his condition rather than the work was bad for him. Work would seem likely to divert him. Seeing that no one for many years after 1919 thought him totally and permanently disabled, and in view of his actual continuous work at his usual occupation for years after that date, there is no room to find that his insurance matured before its lapse. Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492. Idiopathic epilepsy, while permanent and progressive, and though disabling from some activities, is usually not immediately productive of total disability. See United States v. Carper (C.C.A.) 75 F.(2d) 191; United States v. Legg (C.C.A.) 70 F.(2d) 106; United States v. Reid (C.C.A.) 70 F.(2d) 518.

Cartey's work record overrides any retrospective opinions of professional or lay witnesses. In view of it, we do not think it necessary to examine whether error was committed in not permitting certain questions seeking to elicit such opinions. The assignments of error and the record do not even identify the witnesses referred to, so that we could not with certainty review the rulings complained of. The court's conclusion was right, irrespective of opinions.

■ It is lastly contended that since the Veterans' Administration put its denial on the false basis of the Economy Act the United States are estopped now to contest the merits of the claim. The contention misconceives the function of the Veterans' Administration. It is to investigate claims and pay meritorious ones, but its action does not breed admissions and waivers binding on the United States in a de novo trial in court. Its mistake of law as to the effect of the Economy Act did not involve any admission of merit in the claim, much less an estoppel on that subject. While technical and subsidiary matters such as formal proofs of loss are often held waived by an absolute denial of liability, we believe that no case can be found where an insurer who refused to pay because of some collateral matter was held estopped to deny that the event insured against had occurred. To prove that it has happened always remains essential to the plaintiff's case. No error appearing, the judgment is affirmed.