**UNITED STATES v. STILL.**
No. 4766.

Circuit Court of Appeals, Fourth Circuit.
June 10, 1941.

Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C. (Claud N. Sapp, U. S. Atty., and Henry H. Edens, Asst. U. S. Atty., both of Columbia, S. C., and Julius C. Martin, Director, Bureau of War Risk Litigation, and Fendall Marbury, both of Washington, D. C., Sp. Atty., Department of Justice, on the brief), for appellant.

C. T. McDonald, of Florence, S. C., and Warren E. Miller, of Washington, D. C. (R. K. Wise, of Columbia, S. C., on the brief), for appellee.

Before SOPER, DOBIE, and NORTH-COTT, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal by the United States of America (hereinafter called appellant) from a judgment of the District Court of the United States for the Eastern District of South Carolina in favor of Carroll O. Still (hereinafter called appellee) in a suit to recover permanent disability benefits under a $10,000 contract of war risk term insurance issued to appellee during the period of his naval service between May 10, 1917, and December 12, 1918.

Prior to entering the naval service in 1917, appellee had attended high school and college and had been engaged as a mechanic and general utility man with an automobile agency in Columbia, South Carolina. He held the rank of Chief Machinist Mate in the navy and served as an instructor at an air field in Florida. After his discharge from the service on December 12, 1918, he was hired as a traveling salesman by the automobile agency where he had been previously employed. His employer at this time, James M. Black, testified that appellee always returned from trips with a headache and a flushed face; that appellee was "far from normal * * * so far as health was concerned"; and that he finally let appellee go in 1920 or 1921, after obtaining a connection for him with an agency in Aiken, South Carolina.

Appellee married in 1920. He remained with the agency in Aiken for six or eight months and then returned to his home in Florence, South Carolina, where he was associated for a time with the Florence Cadillac Company.

From August 1, 1924, to June 3, 1928, appellee was employed by the Kelly-Springfield Tire Company as a traveling salesman in South Carolina. He was paid a monthly salary of $200 until September 1, 1925, and of $225 until the date he left the company. Appellee testified that throughout this period, ever since he had left the naval service, he was suffering from "severe migraine headaches, nausea and pain in the chest." He stated that the district manager of Kelly-Springfield had to ride with him part of the time in 1926 and 1927; that, considering the time he spent in the hospital, he was forced to take off an average of three days out of every week that he worked for Kelly-Springfield; that sometimes he became disabled while on the road and would consequently have to remain in his hotel room for a couple of days; that he had left Kelly-Springfield because he "couldn't produce." Appellee's wife testified that whenever he returned from a trip on the road he was pretty well worn out; that he usually went to bed and was visited by a doctor over the week-end; that on numerous occasions he came home during the middle of the week; that his physical condition was growing worse.

Appellee then sold cars on a commission-basis for the Chevrolet agency for about two or three months. From March 16, 1929, to February 14, 1930, he was employed as a traveling salesman for the Fisk Tire Company at a monthly salary of $200 and expenses. Appellee's wife testified that during this eleven-month period his condition continued to grow worse; that he would feel better when not working; that he had severe pains, headaches and nausea; that he was examined medically many times; that, after spending the week-end in bed, appellee had difficulty in getting out of bed on Monday morning to go to work.

In the fall of 1930, appellee formed a partnership with a pharmacist to engage in the drug business. They purchased a drug store but, after four or five months, appellee's partner purchased his interest. The former partner, Dr. Claude E. Harris, testified that the partnership was dissolved because of appellee's physical inability to stay at the store.

Since 1930, appellee has done no work. He was admitted to the Veterans' Hospital at Lake City, Florida, in December, 1930, and was discharged therefrom on February 24, 1931. While at the hospital, he applied for, and obtained, disability benefits on a policy of commercial insurance. These benefits were paid to him

until 1937, at which time the company reached a settlement with him. Appellee testified that the company "forced" him to settle because it was of the opinion that he was totally disabled at the time he took out the policy, June, 1926. It is admitted that at the present time appellee has a severe and totally disabling cardiac condition. Every medical examination which he has had since 1931 has shown a progressively degenerating heart.

Appellee alleged in his complaint that he had been totally permanently disabled since December 12, 1918, the date of his discharge from the naval service. However, it was stipulated at the trial that he had maintained his policy in force by premium payments through June 30, 1927, and the case was tried below, without a jury, on the sole issue of whether total permanent disability had occurred on or prior to that date. Judge Wyche entered findings of fact and conclusions of law in favor of appellee, finding that he was totally permanently disabled on June 30, 1927, from heart trouble. A judgment was entered awarding appellee monthly insurance benefits from the last-mentioned date.

Appellant maintains that the finding of the trial court that appellee was totally permanently disabled on June 30, 1927, is "clearly erroneous." Under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, governing jury-waived cases, this court will not disturb the findings of fact of the trial court unless they are clearly against the weight of the evidence. Aetna Life Ins. Co. v. Kepler, 8 Cir., 1941, 116 F.2d 1, 4, 5. See McDaniel v. United States, 7 Cir., 1939, 108 F.2d 450, 452; Manning v. Gagne, 1 Cir., 1939, 108 F.2d 718, 720, 721. This is only the recognition of a rule long followed by appellate courts in reviewing equity cases. See Guilford Const. Co. v. Biggs, 4 Cir., 1939, 102 F.2d 46, 47; cf. Wolf Mineral Process Corp. v. Minerals Separations North American Corp., 4 Cir., 1927, 18 F.2d 483, 486.

The burden rested upon appellee to prove below that before the policy had lapsed on June 30, 1927, he had become totally and permanently disabled. See Miller v. United States, 1935, 294 U.S. 435, 440, 55 S.Ct. 440, 79 L.Ed. 977; United States v. Diehl, 4 Cir., 1932, 62 F.2d 343, 345. Also, Rodgers v. United States, 4 Cir., 1939, 104 F.2d 884; United States v. Lawson, 9 Cir., 1931, 50 F.2d 646, 651. Some of the evidence offered on this point has already been outlined in the above history of appellee's work record. The remaining evidence in brief is stated below.

Appellee testified that ever since leaving the service he has suffered from "severe migraine headaches, nausea and pain in the chest"; that he started suffering from these ailments at the time he began working for Mr. Black in 1918; that his condition in 1926 and 1927 was about the same as it is now; that he takes medicine for his pains every day. On cross-examination, appellee stated that when he first visited the government physician in May and October, 1921, and in May, 1922, the physician, Dr. Hicks, knew of his headaches. However, he admitted that when he visited the Veterans' Bureau for the examination of July 12, 1927, he had only complained about his feet.

Mrs. Carroll O. Still, appellee's wife, testified that at the time of their marriage in 1920 "he wasn't what you would call healthy"; that in 1926 he had been carried to the hospital in an unconscious state; that his condition had been gradually becoming worse. August W. Elliott, a friend of appellee and a boarder in appellee's home, testified that appellee's condition today "has certainly been no better" than what it was back in 1924, 1925, and 1926.

J. J. Clemmons, a local insurance agent, testified for appellee and stated that he had sold to appellee in 1924 and in 1926 an accident and health policy; but that in 1925, for an unknown reason, the insurance company had rejected appellee's application for life insurance. Fred W. Willis, another local insurance agent, stated that he had discussed life insurance with appellee in 1926; that, inasmuch as appellee was having headaches, he did not think there was any use in taking appellee's application. Mr. Willis did testify, however, that one of his associates had sold to appellee the same insurance that he, Willis, had formerly suggested; that he believed that the insurance doctor, with knowledge of appellee's headaches, had passed appellee after a physical examination.

Appellee offered the medical testimony of two doctors. The first, Dr. L. B. Salters, testified that in 1926, at the time that appellee was carried to the Saunders Memorial Hospital in an unconscious state, he had given appellee a respiratory stimulant but had made no diagnosis of appel-

lee's general condition. The second doctor, Dr. John L. Bruce, testified that in June, 1928, he had examined appellee and found that he was then having a severe migraine headache, was vomiting, and was complaining quite a bit of pain in the upper abdominal region; that, at that time, a preliminary diagnosis was made of an ulcerated stomach and that the headache was of an unknown origin. Dr. Bruce also testified that he really began treating appellee in 1931; that an electrocardiogram was then made of appellee; that he diagnosed appellee as having from 1931 to date a myocarditis, a heart condition, the generalized hardening of the blood vessels over his body, and severe migraine headaches. Since 1931, Dr. Bruce had advised appellee not to do any work. Looking back over the history of the case, he testified that the pain which appellee had in 1928 in the upper abdominal region "had some bearing on his heart condition", and that he believed that the 1928 pain was a cardiac pain; that the pain and all the aforementioned symptoms that were present in the 1928 attack are the same today; that, assuming that appellee was carried to the hospital in 1926, in an unconscious state and with stomach pains, he was of the opinion that at that time appellee had had a severe heart attack. In answer to another question, he added that, assuming such a heart condition in 1926, 1927, 1928, and 1929, appellee was not "helping" himself by continuing in the type of work in which he was then engaged. The witness had previously testified that appellee had become a morphine addict since 1931; and that he had prescribed morphine for appellee on several occasions.

Appellant offered testimony to show that appellee had been examined by Government physicians in May, October, and December, 1921; May, 1922; July, 1927; December, 1930; February, March and May, 1931; June 2 and 28, 1932; June, 1933; March, May and September, 1934; July, 1935, and June, 1937. In the reports of the examinations made prior to the controlling date of June 30, 1927, and in the report dated twelve days thereafter on July 12, 1927, the complaints made by appellee and the diagnosis made by the physicians were limited to the condition of appellee's teeth and feet. (It is to be noted that appellee maintains that in the 1921 and 1922 examinations the Government physician, Dr. Hicks, "knew" of his headaches. He admitted that as late as the

examination of July 12, 1927, he had only complained of his feet.)

The first complaint of headaches appeared in the report dated February 24, 1931, covering examinations during the period when appellee was in the Government hospital. Appellee's statements as to the occurrence of the headaches varied from "once to twice per month" to "about once a week." The report of a special heart examination made at that time showed that there was a slight murmur; that the arteries were "slightly firm and slightly thickened"; and that, when appellee took any physical exercise, there was some elevation in pulse and blood pressure. An electrocardiogram showed "probable myocardial insufficiency." No complaint of pains in the abdomen appeared until the report dated July 15, 1931; and no complaint of nausea, until June 28, 1932.

The report dated July 15, 1931, included diagnoses of severe hysteria and general mild hypertension. In the report of June 2, 1932, there was a diagnosis of mild chronic myocarditis, moderate arterial hypertension, and severe hemicrania. There was no diagnosis of any heart or arterial condition in the subsequent reports covering hospitalization from June 28 to August 26, 1932; June 29 to July 26, 1933; March 20 to May 7, 1934; or the examination on May 28, 1934. The report dated September 12, 1934, included a diagnosis of moderate hypertensive heart disease; and the reports of July 20, 1935, and June, 1937, diagnosed the hypertensive heart condition as severe.

Dr. James S. Fouche, a Government physician testified as a witness for appellant that the heart and arterial condition shown in the report of examination during appellee's hospitalization from December 31, 1930, to February 24, 1931, was "very likely" the beginning of the conditions found in 1937; that the condition shown in 1937 "would be against him to work" and was what one would expect of a progressive condition; that migraine has no connection with a heart condition, although pains in the chest and head, and nausea, may be symptoms of such a condition and headaches may accompany arteriosclerosis; but that if a man had headaches from heart trouble which had disabled him from work two or three days a week, or even for week-ends, from 1923 through 1927, one would certainly expect

a competent physician, who made an examination in 1927, to find the heart trouble.

Dr. J. R. Allison testified that he had examined appellee for the Government on July 12, 1927, and in March, 1931 (a month after appellee had been hospitalized for seven weeks) and had found the heart normal and the blood pressure within normal limits; that rest and treatment in the hospital were evidently beneficial to appellee and that symptoms of heart trouble usually disappear in mild cases after such a period of rest; that in the opinion of this witness, appellee's heart trouble was not seriously disabling at the time of either of the examinations made by this witness; that the reports of later examinations by other physicians show that appellee was "in pretty bad shape" in 1937 and that there had been a gradual progression of his condition which was "the usual course of such conditions."

We reject appellant's contention that appellee's work record conclusively negatives a finding of total permanent disability. This court has plainly stated before that a claimant is not conclusively barred from recovery by the bare fact that he has worked for substantial periods after the time of his claimed total and permanent disability. Carter v. United States, 4 Cir., 1931, 49 F.2d 221, 223. There are legions of cases in which claimants have been allowed recovery notwithstanding the existence of substantial work records. E. g., Berry v. United States, 61 S.Ct. 637, 85 L.Ed. —— (March 3, 1941); Carter v. United States, supra; United States v. Holland, 9 Cir., 1940, 111 F.2d 949, 953; United States v. Rice, 8 Cir., 1934, 72 F.2d 676, 677; United States v. Lawson, supra; United States v. Godfrey, 1 Cir., 1931, 47 F.2d 126; United States v. Phillips, 8 Cir., 1930, 44 F.2d 689. It is true that, where testimony is contradicted by the physical facts, a court may not give credence to such testimony, and that, where a claimant has worked with reasonable regularity over long periods of time, recovery on war risk insurance may be barred. E. g., Lumbra v. United States, 1934, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; United States v. Diehl, supra; Nicolay v. United States, 10 Cir., 1931, 51 F.2d 170; cf. United States v. Harrison, 4 Cir., 1931, 49 F.2d 227. But the nature of the work, the manner of performance, and the physical and mental effect upon the claimant, must all be considered in weighing the effect of this type of evidence.

We are of the opinion that appellee's work record does not, in itself, conclusively negative his claim of total and permanent disability. But, on the other hand, we do not believe that appellee's evidence of his difficulty in performing his listed tasks is sufficient, taken by itself, to support the findings of the lower court. The type of employment in which appellee was engaged before and after the crucial date of June 30, 1927, was of a strenuous nature. There are many occupations open to persons in the physical condition of appellee which are less tiring than the work of a traveling salesman. The mere fact that a claimant is unable to do the kind of work that he had been accustomed to perform prior to his injury does not establish the total and permanent character of his disability. See Miller v. United States, supra, 294 U.S. at page 441, 55 S.Ct. 440, 79 L.Ed. 977; Lumbra v. United States, supra, 290 U.S., at page 559, 54 S.Ct. 272, 78 L.Ed. 492. To support a finding of total and permanent disability, the claimant must show a determined, though unsuccessful, effort to attempt substantially gainful employment which is reasonably suitable for one suffering from the claimed impairment.

Although we have considered all of appellee's evidence, in addition to the evidence of his poor work record, we believe that the finding that appellee was totally and permanently disabled on June 30, 1927, is clearly erroneous. Appellee offered evidence of his weakened condition, his headaches, his nausea, his stomach pains, all during the period of his employment with Kelly-Springfield and Fisk, i. e., before and after June 30, 1927. Yet, prior to December, 1930, appellee made no complaint of these symptoms to any of the Government physicians who had examined him on five separate occasions. Prior to December, 1930, no diagnosis was made by any physician, Government or private, of heart or arterial trouble. Appellee's own physician, Dr. Bruce, first made his diagnosis in 1931. Furthermore, with the exception of the three-day period in 1926 when he became unconscious under circumstances not disclosed by the evidence, appellee had not spent prior to December, 1930, any time in any hospital.

Appellee relied strongly on the case of Berry v. United States, 61 S.Ct. 637, 639, 85 L.Ed. —— (decided by the United States Supreme Court March 3, 1941), and that case is certainly one of the strongest cases

in favor of an insured under policies of war-risk insurance. Particular stress is laid by appellee's counsel on these words, taken from Mr. Justice Black's opinion in that case:

"It was not necessary that petitioner be bed-ridden, wholly helpless, or that he should abandon every possible effort to work in order for the jury to find that he was totally and permanently disabled. It cannot be doubted that if petitioner had refrained from trying to do any work at all, and the same evidence of physical impairment which appears in this record had been offered, a jury could have properly found him totally and permanently disabled. And the jury could have found that his efforts to work—all of which sooner or later resulted in failure—were made not because of his ability to work but because of his unwillingness to live a life of idleness, even though totally and permanently disabled within the meaning of his policies."

The instant case, we think, can clearly be distinguished from the Berry case. There, the insured suffered from two severe wounds (with a very short interval between these wounds) and there was little or no question as to the nature, extent or severity of his injuries and the resulting harm to his physical condition and his nervous system. In the instant case, there was not even a suggestion of any heart ailment until long after the controlling date, June 30, 1927. The differences between the work-records in the two cases are many, varied and important.

True it is that insured must not be penalized for his work and his efforts to work, when he might have remained utterly idle; but equally true is it that insured cannot for long periods of time engage in gainful endeavor and then deny the probative effect of such endeavors, insofar as these endeavors tend to show that insured was not totally and permanently disabled. The Kelly-Springfield Tire Company and the Fisk Tire Company were not charitable corporations engaged in taking care of disabled veterans; they were business corporations paying their employees for services rendered. The Kelly-Springfield Tire Company paid appellee full salary for an entire year after June 30, 1927; while, in 1929 and 1930, appellee received again his full salary for some eleven months from the Fisk Tire Company.

Dr. Bruce testified that, after considering the entire history of the case, he was of the opinion that appellee had suffered a severe heart attack in 1926. Accepting this testimony for what it is worth in the face of the many actual examinations by Government doctors, we still do not believe that there is even substantial evidence to support the finding in question. At most, there is but evidence of partial disability; and the rule is well-settled that "partial disability existing at the time of lapse does not warrant a recovery, even though total disability may subsequently result * * *." United States v. Diehl, supra, 62 F.2d at page 345. We are strongly impressed by the fact that twelve days after the policy had lapsed, July 12, 1927, a careful physical examination by a well-qualified Government physician revealed that appellee had a normal heart.

This Court has in many cases manifested its sympathy for disabled veterans to whom the Government has issued war-risk policies. And we are loath to set aside the careful findings of the trial judge. Yet we feel so constrained, in the light of a careful survey of all the evidence in the record.

For the reasons expressed above, the judgment of the District Court is reversed.

Reversed.