Walter F. SCALES

v.

Arthur S. FLEMMING, Secretary of Health, Education and Welfare.

Civ. A. No. 58-1180.

United States District Court
D. Massachusetts.

May 26, 1959.

---

Burton A. Schwalb, Cambridge, Mass., for plaintiff.

Anthony Julian, U. S. Atty., P. Craig Combs, Asst. U. S. Atty., Boston, Mass., for defendant.

WYZANSKI, District Judge.

This is an action under § 205 of the Social Security Act as amended, 42 U.S. C.A. § 405(g), to review a "final decision" of the Secretary of Health, Education, and Welfare. In the instant case the actual decision was rendered on August 15, 1958 by a referee in the Office of the Appeals Council, Social Security Administration. It became the Secretary's "final decision" on October 15, 1958 when the Appeals Council denied plaintiff's request for review.

In general, the issues raised in this case are whether there is any substantial evidence to support the Secretary's finding that plaintiff was not entitled to the disability he claimed under § 216(i) (1) of the Social Security Act, as amended, 42 U.S.C.A. § 416(i) (1), and whether the hearing by the referee was fair.

In the recent case of Jacobson v. Folsom, D.C.S.D.N.Y., 158 F.Supp. 281, Judge Kaufman so fully explained the statutory background that it is unnecessary for this Court to traverse the same ground. It will be sufficient to say that if a covered worker is totally disabled for a period of six months or more during which he was unable to engage in any substantial gainful occupation the periods during which that disability existed are excluded from the record upon which his social security benefits are calculated.

The particularly relevant statutory language is as follows. Under § 216(i) (1) of the Act "the term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * "

In commenting on this provision when it was before the 83rd Congress 2nd Session both the Senate Committee on Finance (Senate Report No. 1987, pp.

20–21) and the House Committee on Ways and Means (House Report No. 1698, p. 23) stated that "(1) There must be a medically determinable impairment of serious proportions which is expected to be of long-continued and indefinite duration or to result in death and (2) there must be a present inability to engage in substantial gainful work by reason of such impairment * * * the requirement [is] that the individual be disabled not only for his usual work but also for any type of substantial gainful activity."

Interpreting this provision the Social Security Administration promulgated a regulation, § 404.1501 of Regulations No. 4 as amended [20 C.F.R. 404.1501], published in the Federal Register June 20, 1957, Vol. 22, p. 4362. Paragraphs (b), (c) and (d) which seem most relevant, follow:

"(b) In determining whether an individual's impairment makes him unable to engage in such [substantial gainful] activity, primary consideration is given to the severity of his impairment. Consideration is also given to such other factors as the individual's education, training and work experience.

"(c) It must be established by medical evidence, and where necessary by appropriate medical tests, that the applicant's impairment results in such a lack of ability to perform significant functions—such as moving about, handling objects, hearing or speaking, or, in a case of mental impairment, reasoning or understanding—that he cannot, with his training, education and work experience, engage in any kind of substantial gainful activity.

"(d) Whether or not the impairment in a particular case constitutes a disability is determined from all of the facts of that case. Examples of some impairments which would ordinarily be considered as preventing substantial gainful activity are set out in paragraph (3) of this section. The existence of one of these impairments (or of an impairment of greater severity), however, will not in and of itself always permit a finding that an individual is under a disability as defined in the law. Conditions which fall short of the levels of severity indicated must also be evaluated in terms of whether they do in fact prevent the individual from engaging in any substantial gainful activity."

█ In the instant case Scales, the plaintiff, applied on September 25, 1956 for disability insurance benefits [H. 52]. The application states that Scales was born September 18, 1894; that he was injured in January 1956 while working for Rustproof Metal Finishing Corp. where he did receiving, shipping, and appraising of jobs, and supervised 10 or 12 men, that the only other work he had ever done was to play a trombone in the army, and that his education extended only to the eighth grade of elementary school. He states he was injured when he stepped into a tank of nitric acid, that he suffered severe burns on his hands and his left arm and his left foot, but that the burns on the hands have cleared up, that he cannot put on his shoe, and that he suffers pain in the left foot and leg.

Accompanying the application was the medical report of Dr. James J. Lawlor who treated Scales from January 3, 1956 to September 24, 1956. He stated that the "motions of left foot are limited. Unable to wear shoes because of tenderness. Some swelling and scarification present."

June 3, 1957 the Assistant Director of the District Office wrote Scales that his "impairment has not been severe enough to prevent you from doing some gainful work" but if Scales did not agree with this determination he could have a reconsideration hearing, before a referee.

June 14, 1957 Scales asked for reconsideration. He submitted a letter from Dr. Myron H. Matz stating that "there were wounds which required dressings for some time. At present he has thin

skin over the involved areas. This becomes irritated easily and he has not been able to wear a regular shoe. Because of the unequal weight bearing, he also has pain at times in the left hip. During damp weather there is a burning sensation in the foot."

July 23, 1957 the Assistant Director of the District Office again rejected Scales' application. The reason given was that "Although your impairments have temporarily interfered with the full performance of your regular work, they have not been shown to be of enough severity to prevent your return to some type of gainful work * * *." The Assistant Director noted that Scales might request a hearing by the referee.

August 7, 1957 Scales requested a hearing.

With Scales' consent, the Massachusetts Rehabilitation Commission requested Dr. Mortimer S. Greenberg to examine him. Dr. Greenberg found Scales wearing an improvised shoe. He inspected Scales' left leg and found an area of atrophy of the skin about two inches in width extending from above the malleolus around the posterior aspect of the leg and on to the lateral surface. In addition, there was a similar small patch of atrophic skin on the lateral aspect of the foot itself. This area was about 1 inch by ½ inch. These areas of atrophy of the skin also showed slight erythema. Dr. Greenberg concluded that there was no ulceration of the skin, no involvement of any deeper tissues, no true anatomical damage, and no functional loss. But he expressed his view that the subjective complaints of pain on standing seem to be very real.

Referee Bingham conducted a hearing on June 20, 1958. Scales appeared without counsel. The referee offered to postpone the case until Scales had counsel, but, after some hesitation, Scales elected to proceed. The referee admitted as exhibits the various documents and reports already referred to in this opinion.

Scales took the stand and briefly described his injuries. The referee in a question said "You stated you're prevented from working at the present time and you cannot put your shoes on and have suffered pain in your foot and leg * * * and that you did not wish to be referred to Vocational Rehabilitation." To this question Scales gave no clear answer. Answering questions of the referee, Scales testified that he had not been able to go anywhere since the accident except by cab, that he could partially use his left hand, and that he could sign his name with his right hand, though "it take me about two or three days." Scales said he had been a security officer [that is, a guard] at the M.I T. radiation laboratory, that he had done plating work, and that he had played the trombone in the Army band but his teeth being bad he could no longer do that.

The referee asked Scales whether "any of your doctors ever suggested that you could perform some kind of light work that didn't * * * involve substantial standing or walking." Scales to this request for hearsay information answered "Dr. Bradford told me you're out." The referee indicated that he would receive Dr. Bradford's report if Scales chose to submit it after the hearing. But Scales never did submit the report.

Scales' landlady then testified that Scales requires help to go up and down stairs, that he cannot stand on his foot, and that when he walks around the room his foot puffs up.

The referee's decision recites with care the evidence before him, and makes a general finding that "the claimant was not prevented from engaging in any substantial gainful activity beginning from the date alleged, January 1956 * * * by reason of medically determinable physical or mental impairments or a combination of such impairments which can be expected to result in death or be of long-continued and indefinite duration." There are in the decision what appear to be subsidiary findings to the effect that (1) the medical evidence shows that the objective indicia of injury are mini-

mal but that the claimant's complaints of pain on standing are very real, and (2) "his impairments on an over-all basis do not appear to be such as to preclude some form of sedentary work."

In short it appears, though not too clearly, that the referee found that there was medical evidence of impairment, and that the impairment made it impossible for Scales to continue at work where he had to stand, but that Scales could do sedentary work. It does not seem possible to read the decision as making a finding that Scales could work standing. Had this been the finding, it would be unsupported by any evidence.

On appeal to this Court Scales makes a number of points. He contends that there is no substantial evidence to support the referee's decision, that he should not have relied on Dr. Greenberg's report, that he should have sent for (or re-opened the hearing to receive) Dr. Bradford's report, that he did not consider, as required by Social Security Administration Regulation 4 paragraph (b) such factors as the education, training, and experience of Scales, and that he failed to give Scales a fair hearing because he misled Scales as to the effect of the absence of counsel and other matters.

All of these points do not need to be considered. This Court assumes that the referee did in effect find (1) that there was medical evidence that Scales' leg was impaired, (2) that this impairment precluded Scales from doing work where he had to stand, and (3) if Scales could not do other work this would be a severe impairment. On this assumption, Scales was not aggrieved by the referee's reliance on Dr. Greenberg or his failure to use Dr. Bradford's report.

But the point of real significance is whether the referee could conclude that Scales was employable in any substantial gainful activity of a sedentary nature.

The defendant quite rightly notes that in other areas of law where a person claims that he is totally disabled it is up to him to bear the burden of negativing the possibility of his being employed even in types of jobs he never had tried. He has to show that he or someone else probed the labor market and found that there were no available substantial jobs for anyone with his characteristics and possibilities of rehabilitation. Cf. United States v. Still, 4 Cir., 120 F.2d 876. And surely the Social Security Administration could reasonably have put upon claimants the burden of proving that there was no market for their services. But those who drafted the regulations presumably considered that there would be inconveniences and inequities in applying to this Act the usual formula. Claimants were usually poor. Rarely did they have lawyers. Efforts to show the state of the labor market would be expensive. To require a claimant in each case to show what he had done in looking for different types of jobs might in some instances work a hardship. Therefore, the Social Security Administration's Regulation directs that after giving primary consideration to the severity of the claimant's impairment, those who pass upon his claim shall consider such other factors as the individual's education, training, and work experience.

In this case the referee did recite that the claimant was 61 when injured, that he had completed only the eighth grade of school, and that he had been a night superintendent who supervised 10 or 12 men who did receiving and shipping. The referee failed to note that this position of night superintendent, like all the other positions Scales had ever held, required Scales to be on his feet most of the time. Despite this fact, the referee recited that Scales' "impairments * * * do not appear to preclude some form of sedentary work." Looked at precisely with emphasis on the word "impairments" this was a quite legitimate finding. But there was no further finding that Scales' education, training, and work experience do not preclude Scales from securing sedentary employment in a substantial gainful activity. So far as this Court can tell the referee did not address himself to that issue, as re-

quired by paragraph (b) of Regulation 4. Nor is it clear that if the referee had so addressed himself, he could properly on the record before him have made a finding that Scales could secure such employment.

Under these circumstances the appropriate course is for this Court to deny defendant's motion for summary judgment and to remand the case to the Secretary for further proceedings.

Defendant's motion denied. Case remanded to the Secretary for further proceedings.