Leo S. SPENCER, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 1270.

United States District Court
W. D. Virginia,
at Roanoke.

Sept. 26, 1963.

Edwin M. Young, Roanoke, Va., for plaintiff.

H. Garnett Scott, Asst. U. S. Atty., Roanoke, Va., for defendant.

MICHIE, District Judge.

This action was brought to review a decision of a Hearing Examiner of the Department of Health, Education and Welfare holding that the plaintiff, Leo S. Spencer, was not entitled to the establishment of a period of disability under § 216(i) of the Social Security Act, as amended, hereinafter called "the Act", (42 U.S.C.A. § 416(i)), nor to disability benefits under § 223 of the Act (42 U.S. C.A. § 423). The Appeals Council of the Social Security Administration having denied a review of the Examiner's holding, that holding became a final decision of the Secretary of Health, Education and Welfare (hereinafter called "the Secretary") and therefore reviewable by action in this Court under § 205(g) of the Act (42 U.S.C.A. § 405(g)).

On October 25, 1960 the plaintiff filed an application to establish a period of disability and an application for disability insurance benefits, alleging that he first became unable to engage in substantial work on December 10, 1959.

The applications were disallowed by the Bureau of Old Age and Survivors Insurance for the Social Security Administration on January 31, 1961. Plaintiff requested reconsideration on November 25, 1961 and on March 29, 1962 the Bureau reaffirmed its original decision. The plaintiff then filed a request for a hearing and a hearing was held at Roanoke, Virginia, before a Hearing Examiner on June 13, 1962. Evidence was taken and the Examiner found that the plaintiff was not entitled to the establishment of a period of disability or to disability benefits and, as above noted, this finding has now become a final decision of the Secretary.

§ 205(g) of the Act provides that in such a proceeding as this the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." And the definitions of "disability" in § 216(i) of the Act, applicable to the establishment of a period of disability, and § 223(c), applicable to disability insurance benefits, are identical as applied to the facts of this case, namely, "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." § 216(i) adds blindness, as there defined, as an additional definition of "disability" for the purposes of that section but blindness is not involved in this case.

The issue to be decided here, then, is whether there is substantial evidence to support the Secretary's conclusion that the plaintiff was not, at the time he filed his application on October 25, 1960, unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long continued and indefinite duration.

In the case of Underwood v. Ribicoff, 298 F.2d 850 (4th Cir., 1962), the Court of Appeals set out certain standards or elements of proof that must be considered in determining whether a claimant can or cannot engage in substantial gainful activity. They are: (1) objective medical facts—these are the clinical findings of doctors who have examined the claimant and are to be divorced from the expert judgment and opinions of said doctors, (2) the diagnosis and expert medical opinion of the doctors who have examined the claimant, (3) subjective evidence of pain and disability testified to by the claimant and corroborated by his wife and his neighbors, (4) claimant's education, background, work history and age. It should be noted that the Underwood case, supra, is factually distinguishable from the present case. There were no objective medical facts refuting the existence of the physical impairments claimed, while in the instant case there is very little, if any, objective medical testimony to support the plaintiff's claims. Nevertheless, the standards set forth in Underwood are helpful in determining whether or not the plaintiff is disabled within the meaning of the Act.

There are a number of medical reports in the file. On March 14, 1960 Dr. Louis P. Ripley examined Mr. Spencer, who was complaining of back discomfort and pain. During this examination Mr. Spencer told Dr. Ripley that he had sustained his injury on December 10, 1959 while operating a polishing-sander machine in a furniture factory in Martinsville, Virginia. He "hung" his foot under a two-by-four and, in an effort to keep himself from falling, twisted his back. He continued working until early February when he was hospitalized for pain on his right side and swelling of the ankles. After five weeks he returned to work for three weeks, missed a short period of time because of the pain in his back, worked for one more week and has been off since then. Dr. Ripley's examination at this time revealed a well developed and nourished man of 48 years, not in acute distress. He found a slight limitation on forward bending but Mr. Spencer was able to extend his finger tips to within 6″ of the floor. Straight leg raising tests were essentially nega-

tive and reflexes were active and equal. Diagnosis at this time was acute strain of the low back with the possibility of some nerve root compression. He recommended ultra-conservative measures for the time being and continued back support.

Dr. Ripley again examined Mr. Spencer on November 2, 1961. The plaintiff was again complaining of intermittent pain and discomfort in the low back and stated that he was disabled. On examination, the doctor found moderate limitation of motion in the lumbar spine with acute bending and extension producing discomfort in the lumbosacral area. Again the reflexes were found to be active and equal and the straight leg raising test negative. Dr. Ripley saw no sign of change in the x-rays from previous x-rays but said that Mr. Spencer had had some change in the structure of the low back which might well produce some pain. Dr. Ripley also assured Mr. Spencer that spinal fusions are highly successful in a large number of cases and that one should get him, Spencer, back to a gainful occupation.

Dr. Claude P. Sherman first examined the plaintiff on December 29, 1959, shortly after plaintiff sustained his injury. He was unable to find significant evidence of injury other than muscle spasm and limited motion of the lumbar spine region. X-rays revealed minor congenital anomaly of the lumbarsacral spine. Dr. Sherman stated, "although Mr. Spencer's claims for total disability have been persistent and emphatic on his part, I have never been able to support the completeness of his claim for disability by objective findings * * *."

Dr. Sherman saw Mr. Spencer again on March 12, 1962, at which time he was informed that Mr. Spencer had been admitted to the hospital in Roanoke and a Dr. John Varner had done a myelogram which failed to find any indications of a herniated disc. Dr. Sherman's examination revealed that the plaintiff's muscle tone remained fairly good and his posture normal, and any disability involved the back region only. Motion tests showed about 60% of normal forward bending, with hyperextension of the lumbar spine completely limited. The doctor found that claimant had about a 20% range of motion when he attempted to bend his lower spine to the left and only 10% range to the right. The straight leg raising test was painful on the right side at 30° and beyond and painful on the left when his leg was elevated to 40°. In Dr. Sherman's estimation a spinal fusion would not rehabilitate this man. It was the doctor's opinion that the plaintiff had been able to continue light work during the entire time he was under study and treatment. He said he was not physically able to do heavy strenuous work. When asked for a prognosis as to when the plaintiff might return to carpentry work, Dr. Sherman stated, "I do not believe this man will ever attempt to do any work so long as compensation can be received from any source without working."

Dr. C. E. Keefer first saw the plaintiff on September 26, 1960 and continued to see him off and on until November 28, 1960. He found some muscle spasm of the back but neurological examination for a ruptured disc was negative. He prescribed physical therapy, a lumbosacral belt and myochysine (drug) weekly and stated that the plaintiff's progress was slow but satisfactory and that he should recover without a permanent disability, except for heavy lifting.

Dr. Keefer's report of August 29, 1962 to the Department of Health, Education and Welfare stated that he had again examined the plaintiff on August 25, 1962 and found more stiffness and soreness which he diagnosed as a lumbarsacral sprain flaring up, coupled with pre-existing degenerative arthritic process. He said that the patient had gotten over the intense pain but that it flares up with any stress as attempting to work. At this examination he said the plaintiff's progress was indefinite and that he thought he was totally disabled.

Dr. Bain examined Mr. Spencer and in his report of February 21, 1961 he stated that all bones, joints and muscles

were normal and that there was no evidence of any muscle spasticity or rigidity or tenderness to substantiate the severity of Mr. Spencer's complaints. He further stated that the plaintiff "showed a 75% loss on the straight leg raising test, but on the other hand, he could raise both knees upon the abdomen and Lasgue's test is absolutely negative for any sciatic nerve involvement and performance of the Lasgue's test contradicted the straight leg raising test." He agreed that the X-rays showed a congenital anomaly and some arthritis in the lumbosacral region.

Dr. L. S. Wornal examined Mr. Spencer on May 2, 1962 and found on the forward bending test that he could still reach his finger tips to within 12″ of the floor. Dr. Wornal also observed that when the plaintiff dressed himself after the examination he seemed to have much more motion in his back than when he was trying to hyperflex it or bend to the right and left during the examination.

Dr. Roy Hoover examined the claimant on April 21, 1961 and found marked limitation of movements in all directions, especially forward bending. Dr. Hoover believed that a spine fusion was indicated and thought that without it Mr. Spencer would be permanently disabled.

The plaintiff testified before the Hearing Examiner that he tries to do light work around the home such as washing dishes and mowing grass. He stated that he has rarely been able to finish mowing the lawn because of the severe pain in his back which makes him nauseated and requires him to stop and lay down. He has also testified that driving an automobile causes him considerable trouble, yet it must be noted that he drove himself 50 miles to the hearing.

█ In looking at the medical testimony it must be remembered that if there is any substantial evidence supporting a finding of fact by the Secretary such finding must be affirmed. (42 U.S.C.A. § 405(g)) Looking at the medical testimony with this in mind, it appears that,

despite the plaintiff's evidence as to the pain he suffers, there is substantial evidence in the record to support the Hearing Examiner's decision that the plaintiff was not disabled within the meaning of the Act.

The plaintiff further contends that, even if there is substantial evidence to the effect that he is not disabled within the strict definition of the term as used in the Act, the evidence at least shows that he can no longer work at his old trade of carpentry and that he therefore comes under the doctrine of Parfenuk v. Flemming, D.C., 182 F.Supp. 532, in which Judge Wyzanski said:

"As I said last May in Scales v. Flemming [D.C., 183 F.Supp. 710], under the Social Security Act, unlike the situation under some other statutes, it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men of his impairment and of his age, experience, and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of work any longer, and of his lack of particular experience and particular education for any other type of job. If there are other kinds of work which are available and for which the claimant is suited, it is the Secretary's burden to go forward to offer evidence of those types of work."

██ This I think is sound law and I have several times had occasion to apply it. But I do not think that it is applicable here for I do not think that the evidence here shows that the plaintiff can no longer work at his old trade of carpentry. The evidence is thoroughly reviewed above and it is not necessary here to repeat that review. Further, the cases in which I have followed that doctrine have arisen in the coal fields where, when the mines shut down, as many of them have now, pretty much everything else shuts down and there is a fair inference that there are no other jobs to be had. But this case comes from Martinsville which is not in the coal fields and is

presumably enjoying the same high degree of prosperity that most of Virginia is enjoying. So even if I felt that the plaintiff could no longer do carpentry work, it is clear that he could perform many kinds of jobs that are generally available and I do not think, in the absence of evidence, that I could assume that jobs generally available throughout the state are not available in Martinsville.

I find, therefore, that the Secretary's decision was supported by substantial evidence and his Motion for Summary Judgment must therefore be granted.

An order will be entered accordingly.