**Joseph GRAY, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of the Department of Health, Education and Welfare, Defendant.**

Civ. A. No. 64–C–19–L.

United States District Court
W. D. Virginia,
Lynchburg Division.

Sept. 21, 1965.

J. Frank Shepherd, Lynchburg, Va., for plaintiff.

Thomas B. Mason, U. S. Atty., Roanoke, Va., for defendant.

BARKSDALE, District Judge.

Joseph Gray has instituted this action under the provisions of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Secretary of Health, Education and Welfare denying his application for disability insurance benefits. Both plaintiff and defendant have filed motions for summary judgment supported by memoranda, and oral argument has been heard. The Social Security Act was amended in a number of particulars, which amend-

ments became effective on July 30, 1965, but counsel have agreed that none of these amendments has any practical application in this case.

## STATEMENT OF THE CASE.

On February 13, 1962, plaintiff filed his application for disability insurance benefits and to establish a period of disability as of October 18, 1961. His application was denied on the ground that he was not disabled under the meaning of the Act. Upon plaintiff's request for reconsideration, the initial determination was affirmed. The plaintiff requested, and was accorded, a hearing before a hearing examiner on October 9, 1963, and the examiner affirmed the prior denial of plaintiff's application. Upon review, the Appeals Council remanded the case to another hearing examiner to take additional testimony, and following a hearing on July 14, 1964, plaintiff's application was again denied. This denial became the final decision of the Secretary on August 27, 1964, when the Appeals Council denied plaintiff's request for review. Timely institution of this action followed.

The question now for determination is whether or not the findings and conclusions adopted by the Secretary are supported by substantial evidence.

## THE FACTS.

Plaintiff was born in West Virginia and is now in his fifty first year. He attended public school for five years, completing the fourth grade, but is unable to read or write other than signing his name. He is married, has five children, three of them being still dependent. His first employment was as a laborer on a WPA project of road construction. He was next employed as a laborer for five or six years at a junk yard in Lynchburg. Then for four years he was employed as a sand cutter by a foundry company in Lynchburg. Next he was employed by the Norfolk & Western Railway as a section hand, but by reason of asthma, he was unable to endure outside work on a year-round basis, so he left this job and entered the employment of the Lynchburg Foundry Company as a "grinder". This employment involved cleaning and removing excess iron from castings when they were removed from the moulds, with an airpowered emery wheel weighing about twenty five pounds. Castings upon which plaintiff worked varied in size from ten pounds to more than a ton. His work was performed in the main foundry building, where he was exposed to much dust, dirt and heat. Grinders now wear respirators, but plaintiff did not wear one while he was working. Plaintiff worked as a grinder for Lynchburg Foundry Company for seventeen years, and was working as such when he was taken ill and "fell out" while grinding on October 18, 1961, and was hospitalized for about ten days. He has done no work since that time. In 1957 he was sent to a State Tuberculosis Sanitorium for about three months. However, it was determined that he did not have tuberculosis, and he returned to his employment. Plaintiff has done no work of any kind since his seizure on October 18, 1961.

At the hearing, this plaintiff described his disabilities as poor hearing, not too much use of his right arm, progressive weakness, stiffness upon sitting very long, shortness of breath, chest and right side pains, dizziness, and not being able to walk much. He further stated that his condition had been growing progressively worse. Since filing his application, plaintiff has been examined by a number of doctors, all of whom agree that plaintiff is suffering from silicosis and other ills consequent to or related to the silicosis. The first diagnosis of silicosis was made by the Company's doctor when an x-ray film of plaintiff's chest was referred to him by the Lynchburg Foundry Company in April 1961. Some pulmonary disease must have been suspected in 1957 when plaintiff was sent to the State Tuberculosis Sanitorium. Plaintiff's own physician has furnished three reports, the earliest in March 1962 when he stated that plaintiff was suffering from early silicosis, from which he had not improved since October 1961.

In his latest report, made May 1964, this doctor stated that plaintiff's condition had neither improved nor worsened, and that it was his opinion that plaintiff was permanently disabled to perform any type of physical labor for which he was qualified. It is to be noted that in all the jobs plaintiff has had, he was engaged in heavy manual labor. There is agreement in all the medical evidence in this case that plaintiff is totally unfit for heavy manual labor, or any employment which would expose him to dusty atmosphere, chemical fumes, or other airborne irritants.

However, there is some evidence from the Secretary's witnesses that plaintiff, is, and has been since October 1961, able to perform semi-skilled or unskilled light work. For instance, Dr. Carroll E. Smith, a vocational consultant, after examining all the available exhibits and listening to the testimony, relying on the "Dictionary of Occupational Titles" published by the United States Department of Labor, and the companion volume, "Worker Trait Requirements for Four Thousand Jobs, as Defined in the Dictionary of Occupational Titles", testified that, although plaintiff was precluded from engaging in heavy manual labor, he was, and had been, able to engage in substantial gainful activity doing "light work, semi-skilled or unskilled bench work, perhaps, in an environment where there would be an absence of airborne irritants". As examples of jobs which he said plaintiff was capable of holding, he listed the jobs of "bag sealer" in a bakery, "snout-puller" in the slaughtering industry, "antisqueak filler" in a shoe factory, and "flagman" on a railroad. He further testified that these jobs do exist in the national economy, and according to the 1960 Census figures did exist in the State of Virginia. However, he admitted that he couldn't say that they exist in or near Lynchburg, and that he had no knowledge of this locale at all. When asked if he knew that in Lynchburg shoe factories antisqueak filling was done by the person who did the stitching, he replied: "They

may do it in Lynchburg. This is still listed as an occupation." He further testified that, as to the job opportunities he had mentioned, they do not necessarily exist in Lynchburg, but "They exist in the American economy, which is broader than Lynchburg." And further, when asked whether or not there are any opportunities available to this man in his environment, he said: "I make no statements what are available in Lynchburg."

After he became ill on the job on October 18, 1961, plaintiff filed an application for benefits under the Virginia Workmen's Compensation Act. On this application, a hearing was had by a member of the Industrial Commission of Virginia on March 29, 1962, and plaintiff was held to be entitled to disability benefits as being permanently disabled. The award stated in part:

"The evidence overwhelmingly preponderates in proving that this employee has contracted the occupational disease of silicosis and that he was last injuriously exposed to the hazards of that disease while employed by the defendant (the Lynchburg Foundry Company) and that this condition has caused the employee to be disabled for work since October 18, 1961. A finding is so made."

■ I am satisfied that the Secretary's finding that the impairment of plaintiff's physical condition did not prevent him from engaging in substantial gainful activity, is lacking in substantial evidence to support it, and that his denial of plaintiff's application should be reversed. It seems to me that the applicable legal principle was well stated by Judge Wyzanski v. Parfenuk v. Flemming, D.C., 182 F.Supp. 532, in which he said:

"As I said last May in Scales v. Flemming (D.C. 183 F.Supp. 710), under the Social Security Act, unlike the situation under some other statutes, it is not the burden of the claimant to introduce evidence which negatives every imaginable job open to men with his impairment and of

his age, experience, and education. It is quite enough if he offers evidence of what he has done, of his inability to do that kind of work any longer and of his lack of particular experience and particular education for any other type of job. If there are other kinds of work which are available and for which the claimant is suited, it is the Secretary's burden to go forward to offer evidence of those types of work."

In Spencer v. Celebrezze, D.C., 221 F.Supp. 528, 531, while he did not think the principle was applicable to the facts of that case, Judge Michie said of the above quoted statement:

"This I think is sound law and I have several times had occasion to apply it."

Applying the same principle, in Ray v. Celebrezze, 4 Cir., 340 F.2d 556, 559, Judge Boreman said:

" * * * The Appeals Council found that in the future Ray could not perform the only type of work he has ever done but stated that industrial and governmental surveys indicate he will be able to perform sedentary or semi-sedentary jobs. This court has held in similar situations that where the Secretary finds a claimant is unable to return to his former job but still is able to work and the evidence in the record does not show any other work which the claimant is capable of doing, the Secretary must take evidence and make specific findings based upon the particular claimant's ability, education, background and experience as to what, if any, kind of work he or she can perform and that employment opportunities of this nature are available. Merely citing catalogues which list capsule descriptions of thousands of jobs available to prospective employees is not sufficient. Hanes v. Celebrezze, 337 F.2d 209, 215 (4 Cir. 1964); Thomas v. Celebrezze, 331 F.2d 541, 546 (4 Cir. 1964); Woodson v. Celebrezze, 325 F.2d 479 (4 Cir. 1963);

Cochran v. Celebrezze, 325 F.2d 137 (4 Cir. 1963). See also, Hall v. Flemming, 289 F.2d 290, (6 Cir. 1961), and Kerner v. Flemming, 283 F.2d 916 (2 Cir. 1960)."

See also Clifton v. Celebrezze, D.C., 241 F.Supp. 609, 610, and Callahan v. Celebrezze, D.C., 242 F.Supp. 507.

It is to be remembered that, during all of his adult life, until he "fell out" on the job on October 18, 1961, plaintiff was engaged in heavy manual labor. Admittedly, he is, and has been since that time, disabled from doing such work. In considering whether or not he has been disabled to engage in substantial gainful employment, doing light work, the report of a psychologist made for the Secretary on October 10, 1962, is interesting. In part, this report stated:

"Significant intellectural impairment is indicated. * * * His visual motor functioning showed signs of moderate pathology, revealed in tremor of the hands, visual reversal, extreme slowness and uncertainty."

It seems to me that it is clear that plaintiff has offered "evidence of what he has done, of his inability to do that kind of work any longer, and his lack of particular experience and particular education for any other type of available job," which has been said to be "quite enough", unless and until the Secretary bears his burden of going forward to offer evidence of the availability of jobs which plaintiff was capable of holding in the plaintiff's locality. In view of the fact of plaintiff's physical disabilities, that he is totally without means, that he and their three dependent children are supported entirely by the earnings of his wife who works as a domestic servant, it is totally unrealistic to think that he could leave home in search of a theoretical job said to exist somewhere in the national economy.

The Secretary's conclusions seem to have been based almost entirely upon the evidence of his vocational counsellor testifying from the "United States Dictionary of Occupational Titles" and "Estimates of Worker Trait Requirements".

I can add nothing to the piercing commentary on such evidence made by Judge Soboleff in Cyrus v. Celebrezze, 4 Cir., 341 F.2d 192. Judge Soboleff concluded his commentary as follows (p. 196):

"The 'U.S. Dictionary of Occupational Titles' and other similar materials may have a proper function. But exclusive reliance on these books is not enough. Ray v. Celebrezze, 340 F.2d 556 (4th Cir. 1965). The existence of jobs in a compilation running the full gamut from astronaut to zookeeper, available somewhere in the national economy, from Anchorage, Alaska, to Zapata, Texas, is of little relevance. Since the abstract 'average' man is not the standard to be used, Pearman v. Ribicoff, 307 F.2d 573 (4th Cir. 1962), there must be evidence to show the reasonable availability of jobs which this particular claimant is capable of performing."

It therefore follows that the decision of the Secretary herein denying plaintiff's application for benefits under the Act, will be reversed.

■ Plaintiff's counsel has petitioned for the allowance of a reasonable attorney's fee for legal services rendered in the representation of plaintiff herein. It appears that plaintiff's counsel has represented the plaintiff and prosecuted his claim, from the time of the filing thereof in February 1962 until the present time, and the plaintiff is indigent and has paid nothing to his attorney on account of his services. It seems to me eminently proper that counsel should be allowed reasonable compensation for his services. It seems quite obvious that, had the denial by the Secretary of plaintiff's claim been affirmed, plaintiff's counsel would receive no compensation whatever for his services. Many, I would assume that most, claimants are indigent, and it would be both unfair and unrealistic to expect competent attorneys to prosecute the claims of indigent defendants without hope of compensation. I would have been willing to allow counsel a reason-

able fee to be paid out of the amount of disability benefits awarded the plaintiff, upon the authorization of Folsom, Secretary, v. McDonald, 4 Cir., 237 F.2d 380, and Celebrezze, Secretary, v. Sparks, 5 Cir., 342 F.2d 286. However, it has come to my attention that, in the Social Security Amendments of 1965, awards of counsel fees are now specifically authorized. There appears in Public Law 89–97, 89th Congress, July 30, 1965, 79 Stat. 286, the following:

"DETERMINATION OF ATTORNEYS' FEES IN COURT PROCEEDINGS UNDER TITLE II

"Sec. 332. The heading of section 206 of the Social Security Act is amended to read 'Representation of Claimants'. Such section is further amended by inserting '(a)' after 'Sec. 206.' and by adding at the end of such section the following new subsection.

" '(b) (1) Whenever a court renders a judgment favorable to a claimant under this title who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 205(i), certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

" '(2) Any attorney who charges, demands, receives, or collects for services rendered in connection with proceedings before a court to which paragraph (1) is applicable any amount in excess of that allowed by the court thereunder shall be guilty

of a misdemeanor and upon conviction thereof shall be subject to a fine of not more than $500, or imprisonment of not more than one year, or both.' "

As it appears to me that twenty five percent of the total of the past due benefits to which this claimant is entitled would be reasonable compensation for the services of plaintiff's counsel rendered herein, such a determination and allowance will be included in the order entered herein.