## UNITED STATES v. SANFORD.

### No. 7270.

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1934.

Kenneth E. Spencer, Atty., Dept. of Justice, of Washington, D. C., and Lawton H. Ware, Atty., Veterans' Administration, of Atlanta, Ga.

O'Glen Ray, of Atlanta, Ga., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

Appellee brought suit on a policy of war risk insurance in the sum of $10,000 issued to him as a soldier, alleging total and permanent disability at the time of his discharge. Error is assigned to the refusal of a directed verdict for defendant at the close of the evidence.

It appears that the original policy lapsed for nonpayment of premiums on January 31, 1919. In 1927 the insurance was reinstated and converted into a five-year term policy, which was in force at the time suit was filed. The insured elected to sue under the original policy and for the recovery of premiums paid in the interval. It is contended by appellant that there was no substantial evidence before the jury to support the verdict.

The record shows without dispute that the insured contracted syphilis from infected soldiers by using the same utensils and dishes in the mess hall while in the Army. He was treated for syphilis while in the Army and was discharged on January 9, 1919. Two days later, on January 11, 1919, he consulted Dr. Emery, a physician of experience in the treatment of syphilis, who undoubtedly qualified as an expert. Dr. Emery testified, in substance, that when Sanford came to him, he made a diagnosis of syphilis in the second stage, but did not believe his condition was progressing and thought him able to follow with reasonable regularity a gainful occupation. He gave in detail the history of his treatments, at frequent intervals covering the period from January 11, 1919, down to May 2, 1933, and testified that he used every known method of treatment; that while many cases of syphilis are curable some are not and Sanford's condition did not yield to treatment; that Sanford had a slight degenerative form of paresis, which he now believed began with the primary infection and that if he had not been treated, he would long since have been either dead or in an asylum; that his case was incurable; that a mild occupation is good for these cases but he thought hard work or any intensive mental strain would be detrimental to Sanford; and that if he attempted to fill an administrative position, he would be apt to make serious mistakes because of his mental condition. Medical evidence introduced by defendant tended to support the testimony of Dr. Emery. Dr. Emery further testified that Sanford had eye trouble that might have been caused by syphilis; that he had suffered a severe hemorrhage of the stomach, which might have resulted from the sloughing off of a gumma; and that a gumma is a syphilitic tumor.

Appellant apparently relies largely on the work record of the insured. In 1919 for six months he was a traveling salesman, receiving $125 per month; for about a year and a half he was in vocational training to become a cotton classer, received training pay and an additional $100 per month from the J. M.

Williams Company; from September or October, 1924, to May, 1925, he worked as a clerk for the Southwestern Compress Company at a salary of $125 or $150 per month; during this employment he was hospitalized for medical treatment but drew full pay; in 1926, 1927, and 1928, for varying periods, he worked for the Atlantic & Pacific Tea Company, first as a clerk at a salary of $12 or $15 a week, then as manager of a store at a salary of $22.50 or $27 per week with a commission on sales, which brought his earnings to about $30 or $35 a week; after December, 1929, he was given employment for a period of nine months as manager of a smaller store of the Atlantic & Pacific Tea Co. at the same salary.

It also appears that on his discharge from the Army he signed a certificate of good health. Later, he was married. In applying for his converted policy he signed a statement that he was then in good health. In explanation of the above Sanford testified that he was advised by Dr. Emery that his disease was not communicable; that he signed the discharge certificate because the war was over and he was anxious to get home; and that he signed the application for the converted policy on the understanding that he was entitled to have his insurance reinstated, though disabled, by paying up all the back premiums, but if he was in good health it could be reinstated on the payment of premiums for only two months. He further testified that he was ambitious and wanted to work but was unable to have any continuous occupation because of the severe treatment he was undergoing and his upset mental condition; that he did not tell his employer he was affected with syphilis; that he had to give up his position as a traveling salesman because it was necessary to come in about every two weeks for treatment; that he did not become a cotton classer because his eyesight was bad; and that he had to give up his position as bookkeeper for the same reason. The superintendent of the Atlantic & Pacific Tea Company testified that Sanford was frequently absent because of his bad health; that he seemed pretty weak when he left; that a sick man could not attend to the grocery business; that after he was laid off as manager, he worked a few Saturdays, but that seemed to be hard for him; that when he was employed again as manager of a smaller store, he left that employment to go to the hospital; that when he went back to work, he thought his health was improved, but he had to leave again.

We have so frequently held that the burden is on the insured in a war risk insurance case to show with reasonable certainty that he was totally and permanently disabled within the life of the policy that citation of authority is unnecessary. However, we have also held that employment for limited periods does not defeat recovery, if it is reasonably certain that disability beginning while the policy was in force would prevent the insured from continuously following a substantially gainful occupation. U. S. v. Acker (C. C. A.) 35 F.(2d) 646; U. S. v. Cox (C. C. A.) 24 F.(2d) 944.

The case presented is not that of a soldier contracting a serious but curable disease in the Army and then neglecting to secure treatment until too late. Sanford promptly sought the best medical treatment to be obtained but in vain. His disease of itself was a serious handicap in securing employment as few people would knowingly employ a syphilitic in any activity bringing him in contact with the public. The frank opinion of Dr. Emery that light employment would be beneficial, the fact of Sanford's marriage, his certificates of good health, and his work record, while evidence in favor of defendant, did not compel a directed verdict. There is no doubt that Sanford was totally and permanently disabled at the time of the trial and a strong inference must be drawn from all the testimony that his condition related back to a period before his discharge from the Army. The longest period he worked was about nine months. It may be presumed that his employment by the Atlantic & Pacific Tea Company would have been permanent if he had been able to work continuously. It is reasonably certain that his physical and mental condition was such that he could not work continuously.

The case was essentially one for the jury on conflicting evidence. On the whole record we cannot say there was no substantial evidence before the jury that would tend to support the verdict. It was not error to refuse a directed verdict for the defendant.

Error is assigned to a portion of the judge's charge defining permanent and total disability. As this assignment was not argued and is clearly without merit, we assume that it has been waived.

The record presents no reversible error.

Affirmed.