Michael J. RYAN, Plaintiff,

v.

Arthur S. FLEMMING, Secretary of Health, Education and Welfare of the United States of America, Defendant.

No. 746.

United States District Court
D. Montana,
Butte Division.

July 1, 1960.

John T. Mullany, Butte, Mont., for plaintiff.

Krest Cyr, U. S. Atty. and Jack H. Bookey, Asst. U. S. Atty., Butte, Mont., for defendant.

MURRAY, Chief Judge.

Plaintiff brought this action under Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, in which it was decided that claimant was not entitled to have a period of disability established under Section 216(i) of the Act, 42 U.S.C.A. § 416(i), or to disability insurance benefits under Section 223(a) of the Act, 42 U.S.C.A. § 423(a).

Plaintiff first filed an application on September 12, 1956, to establish disability commencing in December, 1949. The Bureau determined that his impairment was not of sufficient severity to preclude his engaging in any substantial, gainful activity during the period claimed and he was notified by letter dated May 22,

1957, of the denial of this first application. On December 5, 1957, he filed an application for disability insurance benefits and to establish disability. By letter dated March 25, 1958, the plaintiff was notified by the Bureau of the affirmance of the initial denial of his first application and also of the denial of his second application. Thereafter, the plaintiff requested a hearing on his application before a referee and such hearing was held July 10, 1958, and on August 12, 1958, the referee rendered a decision determining that plaintiff was not entitled to disability insurance benefits or to a period of disability under the Act. Thereafter, plaintiff filed notice of appeal from the decision of the referee with the office of Appeals Council of the Social Security Administration. The office of the Appeals Council granted plaintiff's request for a review of the referee's decision and requested plaintiff to undergo additional physical examination and tests, which request the plaintiff complied with, and thereafter, on September 9, 1959, the Appeals Council affirmed the referee's decision, basing the affirmance on the record which was before the referee and also upon additional evidence consisting of the reports of the doctors as to the last examination and tests of the plaintiff. This suit followed.

Under Section 216(i) (1) of the Social Security Act, the term disability is defined as the inability to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long, continued and indefinite duration.

In order to be eligible for a period of disability, or for disability insurance benefits under the Act, it is necessary that the individual must have 20 quarters of Social Security coverage during the 40 quarter period ending with the quarter in which the period of disability begins, and 6 quarters of Social Security coverage out of the 13 quarter period in which the disability begins. The record shows that plaintiff last fulfilled these eligibility requirements in the calendar quarter ending March 31, 1954, and thus in order to be eligible for the disability benefits claimed, plaintiff's disability must have had its onset prior to April 1, 1954.

■ Before proceeding to review the record in this case, two things must be borne in mind: First, that the burden of proof rests upon one who files a claim with an administrative agency to establish that the required conditions of eligibility have been met, Norment v. Hobby, D.C., 124 F.Supp. 489, Thurston v. Hobby, D.C., 133 F.Supp. 205, and Dowell v. Folsom, D.C., 157 F.Supp. 46, and Second that as provided in Section 205(g) of the Social Security Act, the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.

■ With these considerations in mind, the Court has examined the record in the case. Plaintiff was born in the year 1900 and was 58 years old at the time of his hearing before the referee. At the age of 16 years he commenced underground work in the copper mines in Butte, Montana, as a carman and he worked continuously, with the exception of brief periods, underground in the mines until 1948, at which time he quit working underground because of shortness of breath and inability to do the work required. From 1923 until he left the mines in 1948, plaintiff was employed in general hard rock mining. Plaintiff was an active and prominent member of the Butte Miners Union No. 1, since its organization in 1933. In 1936, he was elected Vice-President of the Union and in 1937, he served as Recording Secretary of the Union. As Recording Secretary of the Union he worked full time and was paid the same wages as union members who were employed as miners. His duties included collecting dues, entering payment in the Union books and putting the stamp in the individual miner's book to show payment. At the weekly Union meetings, he kept minutes in long hand which were later typed by other persons. Over the years the plaintiff has served in other capacities as a Union

member. In the years 1933 through 1949, he was an elected delegate to the national convention of the Mine, Mill and Smeltermans Union, missing only two national conventions in those years. As such delegate to the national convention he participated with other delegates in the preparation of a written report on the convention to the local Union. From sometime in 1948, until sometime in 1949, plaintiff was Secretary of the Montana State Industrial Union Council (CIO) in which position he received a salary of $50 a month. Among other things, it was his duty to accept dues from the local Union and forward dues to the national CIO. He kept records of the monies received and he also prepared in long hand announcements of executive board meetings.

After quitting underground work in the mines in 1948, plaintiff did various types of odd jobs. During the baseball season of 1951, he worked for the City of Butte as a clean up man at the ball park. He worked eight hours a day doing such things as sweeping the grandstands and cleaning the rest rooms. In 1952 and 1953, plaintiff had various jobs doing light work on construction jobs. Such work consisted of handing 1" boards down from a truck to a carpenter who was building cement forms, or handing electricians small drums of copper wire. He worked for a period on a sewer project as a grade man, which consisted of working with a surveyor and raking dirt in the bottom of a sewer ditch to prepare the ditch to receive the sewer pipe.

In all of these various jobs the claimant testified that he felt that he earned his pay and that he always carried out his assignments. So far as the record shows, the last employment in which plaintiff engaged was in 1955 when he obtained three day's work at the Post Office sorting mail during the Christmas rush. Neither this work at the Post Office, nor the work for the City of Butte were covered by Social Security.

The record shows that plaintiff was credited with annual earnings for Social Security purposes in the following amounts:

| Year | Earnings |
|------|----------|
| 1937 | $1715 |
| 1938 | 231 |
| 1939 | 294 |
| 1940 | 693 |
| 1941 | 1314 |
| 1942 | 1678 |
| 1943 | 1432 |
| 1944 | 1736 |
| 1945 | 1481 |
| 1946 | 1133 |
| 1947 | 1475 |
| 1948 | 1076 |
| 1949 | 375 |
| 1950 | None |
| 1951 | 112 |
| 1952 | 805 |
| 1953 | 241 |

No earnings for Social Security purposes are shown after 1953.

Plaintiff testified that the reason that he stopped underground work in the Butte mines in 1948, and that he had been unable to do any heavy work since that time, was because of shortness of breath upon exertion or heavy lifting and a general feeling of tiredness. In December, 1955, while attempting to sweep snow from the sidewalk at his home, plaintiff commenced coughing and spitting blood. As a result he went to his doctor, Dr. Harold Schwartz, and a chest x-ray was taken which showed either second or third degree silicosis. On February 6, 1956, claimant was examined at the Montana State Tuberculosis Sanitarium at Calen, in connection with his application for Montana State silicosis benefits. As a result of such examination, plaintiff was awarded Montana State silicosis benefits, commencing in January, 1956. Such award was made on the basis of the diagnosis by x-ray only and no pulmonary function tests were made. After the referee's decision had been handed down and while plaintiff's case was before the Appeals Council on appeal, and at the request of the Appeals Council, a further physical examination, including pulmonary function

studies, was made of plaintiff. As a result of such examination and tests, the finding was that claimant had pulmonary silicosis, third stage, and a minimal amount of pulmonary obstructive disease.

Prior to 1955, when the coughing and spitting up of blood developed, and in the years 1951, 1952, 1953 and 1954, plaintiff had consulted Dr. Schwartz for various conditions not associated with silicosis or his lungs and had visited the doctor in those years about 75 or 80 times, and according to the doctor in none of those visits did the plaintiff complain of shortness of breath or tiredness or other symptoms associated with silicosis.

The record shows that in his capacity as a Union official, plaintiff was familiar with the problems of silicosis in the Butte mines and had arranged for Union members to have chest x-rays taken, but had never had any taken himself.

■ On this record, and bearing in mind that the burden was upon the plaintiff to establish his disability as defined in the Act, the Court cannot say that the decision is without the support of substantial evidence. While it seems fairly clear from the record that the plaintiff was unable after 1948 to follow his former occupation as a hard rock miner, the disability, required under the Act, is not measured solely by the occupation followed by the plaintiff before the alleged disability. On the contrary, before a claimant is entitled to the disability benefits under the Act, he must be unable to engage in *any* substantial, gainful activity.

The evidence in the record shows that while plaintiff had only an eighth grade education, for a period of several years in his employment as Recording Secretary of the Butte Miners Union and as Secretary of the Montana State Industrial Union Council, he performed duties of a clerical nature, and over the years he likewise had experience as a delegate to national conventions and participated in preparing reports, etc. The referee stated that during the hearing, plaintiff appeared to be in no distress and was very alert mentally and well spoken. It would seem this evidence would support a finding that plaintiff was physically able to perform some sort of clerical work and had the necessary training and experience for such work despite his lack of formal education.

The evidence further shows that after 1948, plaintiff performed various kinds of light physical labor on construction jobs and he testified that on those jobs he felt that he had done his work and earned his pay. Other than the fact that he did not do so after 1953, there is no evidence in the record that plaintiff is no longer able to perform that type of work, and that evidence would support a finding by the referee that plaintiff was able to engage in that type of activity.

Furthermore, the report of the last medical examination and tests performed upon the plaintiff in 1959, indicated third stage silicosis, but a minimal amount of pulmonary obstructive disease. There is likewise the evidence that the plaintiff, by virtue of his work in the mines and his experience as an official of the Miners Union, was aware of the prevalence of silicosis among miners in the community, and though he was calling on his doctor for treatment for other conditions 70 or 80 times from 1951 through 1954, he made no complaint of his pulmonary symptoms until 1956. This evidence would warrant an inference that from a medical standpoint, plaintiff was not disabled within the meaning of the Act even as late as 1959, or that if such disability did then exist, it did not commence until sometime after 1954.

In pointing out the various circumstances shown by the evidence which support the decision of the referee, the Court does not mean to infer or suggest that all of the evidence would not support a decision contrary to the decision of the referee, or that if the Court were trying the issue in the first instance, it would necessarily have reached the same conclusion as the referee. All the Court is attempting to do is point out that there

is substantial evidence supporting the decision, and that being so, the Court is under the law obliged to affirm the decision of the referee and Appeals Council.

It is so ordered.