Paul C. RANDALL, Plaintiff,

v.

Arthur S. FLEMMING, Secretary of Health, Education, and Welfare, United States of America, Defendant.

Civ. A. No. 3803.

United States District Court
W. D. Michigan, S. D.

Feb. 8, 1961.

J. M. Neath, Jr., Grand Rapids, Mich., for plaintiff.

Wendell A. Miles, U. S. Atty., John F. Rooney, Asst. U. S. Atty., Grand Rapids, Mich., for defendant.

STARR, Chief Judge.

The plaintiff brings this action in pursuance of 42 U.S.C.A. § 405(g) to review the final decision of the defendant denying his claim for a period of disability and for disability insurance benefits under the Social Security Act as amended, 42 U.S.C.A. § 301 et seq.

On July 10, 1957, the plaintiff filed the required application for disability insurance benefits, which was denied by the defendant January 21, 1958. On March 28, 1958, the plaintiff filed a request for reconsideration of his claim and submitted additional evidence in support thereof. After reconsideration of the claim and of the additional evidence submitted, the defendant on July 10, 1958, again denied the plaintiff's application for disability insurance benefits. On July 16, 1958, the plaintiff filed a request for a hearing before a referee of the Social Security Administration. A hearing was had on June 9, 1959, and on July 31, 1959, the referee filed his opinion denying the plaintiff's application. On September 30, 1959, the plaintiff filed a request for review of the referee's decision by the defendant's Appeals Council, and on November 4, 1959, the council denied the plaintiff's request for review on the ground that it would result in no advantage to him. For the purpose of review in this court the decision of the Appeals Council was a final decision. See Pirone v. Flemming, D.C., 183 F.Supp. 739, 740; Carqueville v. Folsom, D.C., 170 F.Supp. 777, 779, affirmed 7 Cir., 263 F.2d 875; Jacobson v. Folsom, D.C., 158 F.Supp. 281, 284. See also 20 CFR § 403.710(e).

The evidence presented before the referee may be briefly summarized as follows: The plaintiff was born February 15, 1903, and has the equivalent of an eighth-grade education. He was employed as a motion-picture projectionist and a theater-equipment salesman for about 24 years. Subsequently he did general factory work on various types of machines, and worked as a factory security guard and plant patrolman for short periods of time. In September, 1954, he was laid off from his work as a night patrolman at Peerless Production Company, which was his last regular job, because of excessive absences due to asthmatic attacks. Thereafter he received unemployment insurance benefits of $35 weekly from the Michigan Employment Security Commission for a period of 28 weeks. After his job with Peerless Production was terminated in 1954, plaintiff did some light hauling, using a truck which he had purchased. Although he was barely earning a living, he continued this work until he was hospitalized in the Gratiot community hospital in June of 1956 for approximately eight days as the result of an asthmatic attack. Subsequent to his release from the hospital he secured employment painting a barn but because of exposure to the paint was again placed in the hospital for five days during September of 1956. Since that time the plaintiff has been unemployed although he has tried to secure work. He is presently registered with the Michigan Employment Security Commission, but he has never been sent out to apply for a job. He has applied for plant-protection

work on several occasions but claims he has never been hired because of his physical impairment. He has been informed by personnel officials that he would be required to pass a physical examination and that because of his physical condition it would serve no purpose for him to take such an examination. The plaintiff has sought to earn some money by attempting to repair television sets in his home but claims that he has been unable to complete the work because of his physical condition.

The plaintiff's condition is approximately the same as it was at the time his employment was terminated at Peerless Production in 1954. His primary complaints are tiredness and violent coughing spells, which occur several times a day and which cause shortness of breath. The medication which has been prescribed relieves his symptoms only temporarily. He is also unable to do any amount of lifting because of a back condition dating from 1945. Plaintiff and his wife presently live in a two-room apartment in Grand Rapids, Michigan, and receive welfare benefits. His wife is crippled and for that reason is unable to perform most of the home-making tasks. The plaintiff customarily does the cooking, shopping, and other housework.

Title 42 U.S.C.A. § 405(g) provides in part:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business."

In his complaint filed in this court January 4, 1960, plaintiff alleged that the defendant's findings of fact are not supported by substantial evidence and are contrary to law. The defendant filed answer and a certified copy of the transcript of the record March 18, 1960. In his answer the defendant contends that his findings of fact are supported by substantial evidence and that plaintiff is not entitled to the relief sought.

On August 15, 1960, the defendant filed a motion for a summary judgment in his favor on the ground that his findings of fact are supported by substantial evidence and are therefore conclusive as a matter of law. This motion was heard November 21, 1960, and ably argued by counsel for the parties. Section 405(g), supra, further provides:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by *substantial evidence*, shall be conclusive."

The term "substantial evidence" used in the Social Security Act is also used in the Administrative Procedure Act, 5 U.S.C.A. § 1009(e)(B)(5). In discussing that act in Gooding v. Willard, 2 Cir., 209 F.2d 913, 916, the court said:

"Where, on the record considered as a whole in the light of Universal Camera Corp. v. Labor Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, there is substantial evidence to support the administrative findings of fact they are to be accepted and given effect by the courts. As is pointed out in the opinion in the last mentioned case, 'substantial evidence' means more than evidence which, considered by itself alone, would be sufficiently persuasive to induce the trier of fact to give it the credence and weight essential to support findings. It must have those characteristics to such an extent that in the setting made by the entire record the trier may reasonably find in accordance with it

after giving due consideration to whatever else is shown both in opposition or in accord. Judicial review has been extended by the Administrative Procedure Act to embrace adequate exploration of the record as a whole to enable the reviewing court to arrive at its own judgment in determining that."

█ It is clear that the court's review in the present case must be at least as broad as that provided by the Administrative Procedure Act. See Julian v. Folsom, D.C., 160 F.Supp. 747, 750. In Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U. S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126, the Supreme Court said:

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Universal Camera Corp. v. National Labor Relations Board, 340 U. S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456; Carqueville v. Folsom, D.C., 170 F.Supp. 777, 780, affirmed 7 Cir., 263 F.2d 875; Aaron v. Fleming, D.C., 168 F.Supp. 291, 294; Julian v. Folsom, D.C., 160 F.Supp. 747, 750.

█ Title 42 U.S.C.A. § 405(g) also provides that any finding of fact by the Secretary, which is supported by substantial evidence, shall be conclusive, and therefore it should not be overturned upon review. The proceeding in this court is not a trial de novo and is limited to consideration of the pleadings, the transcript of the proceedings, and the findings of fact. See Rhoads v. Folsom, 7 Cir., 252 F.2d 377, 380; Folsom v. O'Neal, 10 Cir., 250 F.2d 946, 947; Dean v. Flemming, D.C., 180 F.Supp. 553, 555; Chesney v. Flemming, D.C., 180 F.Supp. 437, 439; Jacobson v. Folsom, D.C., 158 F.Supp. 281, 285; Fuller v. Folsom, D.C., 155 F.Supp. 348, 349. The defendant's inferences of fact drawn from the evidence are also conclusive if there is substantial basis to support them. See Folsom v. O'Neal, supra, 250 F.2d at page 947; Fuller v. Folsom, supra, 155 F.

Supp. at page 349; Spencer v. Flemming, D.C., 188 F.Supp. 517, 518.

██ However, the defendant's conclusions of law are not binding upon this court, although they may be considered as persuasive. See Haxton v. Flemming, D.C., 183 F.Supp. 2, 4; Blevins v. Fleming, D.C., 180 F.Supp. 287, 289; O'Brien v. Flemming, D.C., 178 F.Supp. 387, 389; Dunn v. Folsom, D.C., 166 F.Supp. 44, 45; Jacobson v. Folsom, D.C., 158 F.Supp. 281, 285; Bostick v. Folsom, D.C., 157 F.Supp. 108, 110; Fuller v. Folsom, D.C., 155 F.Supp. 348, 349. Furthermore, in reviewing the defendant's findings of fact and decision, the court must not abdicate its conventional judicial function. See Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456; Ellerman v. Flemming, D.C., 188 F.Supp. 521, 525; Jacobson v. Folsom, D.C., 158 F.Supp. 281, 285; Bostick v. Folsom, D.C., 157 F. Supp. 108, 111; Fuller v. Folsom, D.C., 155 F.Supp. 348, 349. The question of what amounts to substantial evidence is a matter of law and therefore this court must review the entire record to determine as a matter of law whether there is substantial evidence to support the defendant's findings and decision denying the plaintiff's application for disability insurance benefits.

█ It is clear that the burden of proving a condition of disability within the terms of the statute is upon the plaintiff during the administrative proceedings and in the proceedings in this court. See Adams v. Flemming, 2 Cir., 276 F.2d 901, 903; Haxton v. Flemming, D.C., 183 F.Supp. 2, 4; Belsky v. Flemming, D.C., 182 F.Supp. 773, 775; Blevins v. Fleming, D.C., 180 F.Supp. 287, 289; Varnado v. Flemming, D.C., 175 F.Supp. 706, 708; Dunn v. Folsom, D.C., 166 F. Supp. 44, 45; Jacobson v. Folsom, D.C., 158 F.Supp. 281, 286; Bostick v. Folsom, D.C., 157 F.Supp. 108, 110; Fuller v. Folsom, D.C., 155 F.Supp. 348, 349.

The plaintiff brings this action in order to establish a period of disability

and to recover disability insurance benefits under the applicable provisions of the Social Security Act. On July 10, 1957, when plaintiff filed his application for disability benefits, 42 U.S.C.A. § 423 provided in part as follows:[1]

"(a) (1) Every individual who—

"(A) is insured for disability insurance benefits (as determined under subsection (c) (1) of this section),

"(B) has attained the age of fifty and has not attained the age of sixty-five,

"(C) has filed application for disability insurance benefits, and

"(D) is under a disability (as defined in subsection (c) (2) of this section) at the time such application is filed, shall be entitled to a disability insurance benefit for each month, beginning with the first month after his waiting period (as defined in subsection (c) (3) of this section) in which he becomes so entitled to such insurance benefits and ending with the month preceding the first month in which any of the following occurs: his disability ceases, he dies, or he attains the age of sixty-five. * * *

"(c) For purposes of this section—

"(1) An individual shall be insured for disability insurance benefits in any month if—

"(A) he would have been a fully and currently insured individual (as defined in section 414 of this title) had he attained retirement age and filed application for benefits under section 402(a) of this title on the first day of such month, and

"(B) he had not less than twenty quarters of coverage during the forty-quarter period ending with the quarter in which such first day occurred, not counting as part of such forty-quarter period any quarter any part of which was included in a period of disability (as defined in section 416(i) of this title) unless such quarter was a quarter of coverage.

"(2) The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required.

"(3) The term 'waiting period' means, in the case of any application for disability insurance benefits, the earliest period of six consecutive calendar months—

"(A) throughout which the individual who files such application has been under a disability, and

"(B) (i) which begins not earlier than with the first day of the sixth month before the month in which such application is filed if such individual is insured for disability insurance benefits in such sixth month, or (ii) if he is not so insured in such month, which begins not earlier than with the first day of the first month after such sixth month in which he is so insured.

"Notwithstanding the preceding provisions of this paragraph, no waiting period may begin for any individual before January 1, 1957; nor may any such period begin for any individual before the first day of the sixth month before the month in which he attains the age of fifty."

The plaintiff in the present case was born February 15, 1903, and therefore was over 50 years of age when he filed his required application for insurance benefits in 1957, and he has not attained the age of 65 years. It also appears that the required waiting period of six months had elapsed before the plaintiff filed his application. For the purpose of

1. Later amendments of § 423 do not affect the plaintiff's claim in the present action.

determining who is entitled to disability insurance benefits § 423(c) (1) refers to § 414 of Title 42 U.S.C.A., which provides in part as follows:

"For the purposes of this subchapter—

"(a) * * * (2) In the case of any individual who did not die prior to September 1, 1950, the term 'fully insured individual' means any individual who had not less than—

"(A) one quarter of coverage (whether acquired before or after such day) for each two of the quarters elapsing after 1950, or after the quarter in which he attained the age of twenty-one, whichever is later, and up to but excluding the quarter in which he attained retirement age, or died, whichever first occurred, except that in no case shall an individual be a fully insured individual unless he has at least six quarters of coverage; or

"(B) forty quarters of coverage, not counting as an elapsed quarter for purposes of subparagraph (A) any quarter any part of which was included in a period of disability (as defined in section 416(i) of this title) unless such quarter was a quarter of coverage. * * *

"(b) The term 'currently insured individual' means any individual who had not less than six quarters of coverage during the thirteen-quarter period ending with (1) the quarter in which he died, (2) the quarter in which he became entitled to old-age insurance benefits, or (3) the quarter in which he became entitled to primary insurance benefits under this subchapter as in effect prior to August 28, 1950, not counting as part of such thirteen-quarter period any quarter any part of which was included in a period of disability unless such quarter was a quarter of coverage, not counting as

part of such thirteen-quarter period any quarter any part of which was included in a period of disability unless such quarter was a quarter of coverage."

■ The plaintiff's earnings record shows that he had accumulated 40 quarters of coverage so that he was a fully insured individual as defined in § 423(c) (1) (A). His earnings record also indicates that he last met the requirement for a currently insured individual as required by § 423(c) (1) (A) in the quarter ending September 30, 1955. Therefore, in order for the plaintiff to recover disability insurance benefits, he must establish that he was under disability on or prior to September 30, 1955. Grindstaff v. Flemming, D.C., 188 F.Supp. 44, 46; Howell v. Flemming, D.C., 188 F.Supp. 223, 224; Sikes v. Flemming, D.C., 187 F.Supp. 872, 874; Ryan v. Flemming, D.C., 187 F.Supp. 655, 656; Carpenter v. Flemming, D.C., 178 F.Supp. 791, 792, 793; Watts v. Secretary of Health, Education & Welfare, D.C., 173 F.Supp. 909, 912.

Section 423(c) (1) (B) also requires that the plaintiff have 20 quarters of coverage during the 40-quarter period ending when the disability began, and it appears that he met this earnings requirement at the time he filed his application on July 10, 1957.

The remaining requirement of § 423 (a) (1) (D), which is the basic issue in this action, is that the plaintiff must have been under a disability at the time his application involved in this action was filed on July 10, 1957. Section 423 (c) (2) provides:

"The term 'disability' means inability to engage in *any substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."[2]

2. In his decision the referee refers to the definition of "disability" provided in § 416(i) (1). However, it should be noted that § 416(i) (1) relates to the preservation of the right to old-age bene-

fits of individuals with extended total disability and expressly excepts § 423, under which plaintiff's right to disability insurance benefits in the present action must be determined.

The referee concluded that the plaintiff had failed to establish that he had an impairment of sufficient severity as to prevent him from being able to engage in any substantial gainful activity at any time prior to the filing of his application for disability insurance benefits. In support of his decision denying the plaintiff's claim for disability benefits the referee stated in part:

"Analyzing the evidence, it is the considered opinion of the referee that to approach the level of severity contemplated by the Act for a type of disorder such as severe bronchial asthma that there would be present X-ray evidence of marked emphysema together with evidence of severe pulmonary insufficiency. Bronchial asthma is a disease producing wheezing, shortness of breath, and spitting of thick sputum. Frequently, it results in paroxysmal attacks followed by periods of relative comfort. Advanced cases of disabling asthma are usually characterized by a kind of blueness called cyanosis manifested in. the face and extremities and by shortness of breath upon effort. Asthma may lead to emphysema and is ordinarily not disabling unless in the presence of such complication. The type of emphysema which causes severe chronic handicap and total disability as a rule is called chronic diffuse obstructive emphysema. The presence of severe emphysema can be detected by means of X-ray films of the chest, physical examination, and by a vital capacity test.

"The medical evidence establishes that the claimant has a history of a respiratory impairment for some years which results in shortness of breath, coughing, and wheezing. The claimant states that in order to obtain relief, he takes frequent injections of adrenalin, together with other medication, which is successful in affording relief. A consultative examination revealed no evidence of active parenchymal dis-

ease of the chest by X-ray. It is to be particularly noted that but little emphysema was noted. Vital capacity was found to be 86% of normal and there was no evidence of any severe pulmonary insufficiency. This conclusion was concurred in by Dr. Fred M. Jameson, who testified at the hearing, the physician stating, in substance, that there was but slight decrease in pulmonary reserve and that it was his opinion that the claimant could perform sedentary work where he was not exposed to dust and fumes. It is also to be noted that no cyanosis was present. * * * There was found only moderate impairment of pulmonary function. It was stated that claimant's respiratory symptoms were aggravated by smoking.

"The daily activities of the claimant would not appear to be those of a totally disabled individual. * * *

"Therefore, it is the finding of the referee that the claimant has failed to establish that he has a medically determinable physical or mental impairment or impairments of sufficient severity as to prevent him from being able to engage in any substantial gainful activity at any time prior to the filing of his applications to establish a period of disability and for disability insurance benefits."

An examination of the legislative history of § 423 indicates that the Congress. substantially adopted the minority report of the Senate Committee on Finance with regard to disability insurance benefits. The entire Senate report is set forth in 3 U.S.Code Congressional and Administrative News, 1956, p. 3877 et seq. At page 3941 the minority report states:

"The old-age and survivors insurance system now pays benefits to retired people who are 65 or over. To a considerable extent these benefits rest on a general presumption of the likelihood of serious disabilities in later life. Yet there is no magic·

in the selection of age 65 as the point at which workers no longer young are forced out of the labor market because of disabilities. There are around a million persons between ages 50 and 65, for example, who would be working but for serious long-term disability. At present they have little recourse but the charity of friends and relatives and the Federal-State programs of assistance to the needy.

"We believe that retirement protection for the 70 million workers under old-age and survivors insurance is woefully incomplete because it does not now provide a lower retirement age for those who are demonstrably retired by reason of a permanent and total disability. We recommend the narrowing of this serious gap in the old-age and survivors insurance system by providing for the payment of retirement benefits at age 50 to those regular workers who are forced into premature retirement because of disability."

The report continues at page 3943 as follows:

"The 1950 bill, as finally passed, did not include the provisions for disability insurance, although the disability problem was recognized to a degree by the establishment of a separate public assistance program for the disabled.

"In 1954 recognition was again given to the equity involved in the case of an insured worker who became disabled. The 'disability freeze' allowed the disabled worker to leave out the years of disability in computing his average wages for the purpose of determining benefits payable at 65. The experience thus far under this legislation has been highly useful in demonstrating that disability can be determined administratively within the framework of our social-security system without unusual difficulty."

The minority report concludes its discussion of disability insurance benefits at page 3947:

"The majority report takes the position that the payment of disability benefits might discourage rehabilitation. Belief that rehabilitation would be hindered or malingering encouraged seems to us to be unjustified in view of the stringent eligibility requirements, limited benefits, and positive stress on rehabilitation contained in the proposal to which we subscribe.

"The eligibility requirements would require a substantial and recent attachment to the labor force, determined by a work history which would have to include covered employment in 6 out of the last 13 and 20 out of the last 40 quarters prior to disability.

"The definition of disability contained in the proposal is a conservative one, limited to medically determinable physical or mental impairment which prevents the. individual from engaging in any substantial gainful activity. Furthermore, a waiting period of 6 consecutive months of disability prior to eligibility for benefits is required.

"Since benefits under our proposal would not be paid to the dependents of a disabled worker, the income available to a worker's family from disability insurance would not be sufficient to encourage persons on the borderline of total disablement to seek benefits if employment alternatives were open to them. A worker who had earned average wages of $350 per month would receive only 31 percent of his former income, or $108.50 monthly. If his wages had averaged $100 monthly, his benefits would be 55 percent, or $55; if $150, they would be 45 percent, or $68.50. In addition to the fact that the worker probably would have been without income for the 6-month waiting period, such bene-

fits would make it unprofitable for a person who could work not to do so.

"The disability provisions which we support incorporate the rehabilitation process with the disability benefit plan. Refusal, without good cause, to accept rehabilitation would result in termination of the individual's benefits. At the same time, in order to avoid setting up barriers to vocational rehabilitation, our proposal specifically provides that a person who performs work while under a State rehabilitation program will not, solely by reason of this work lose his benefits during the first 12 months while he is testing a new earning capacity.

"A great deal of emphasis must rightly be placed on rehabilitation. However, the fact must be recognized that a great many older disabled workers cannot be rehabilitated successfully. Our best information indicates that it has not been possible to rehabilitate more than 25 percent of disabled persons who are age 50 or over. Furthermore, rehabilitation cannot be a substitute for income for the disabled worker."

■ As the Social Security Act is remedial in nature, it should not be given a strict construction. Therefore, the courts have generally construed the act liberally in favor of the party claiming its benefits if any substantial basis exists under which relief can be granted. See Lietz v. Flemming, 6 Cir., 264 F.2d 311, 313; Schroeder v. Hobby, 10 Cir.,

222 F.2d 713, 715; Pruitt v. Flemming, D.C., 182 F.Supp. 159, 162, 163; Dean v. Flemming, D.C., 180 F.Supp. 553, 556; Klimaszewski v. Flemming, D.C., 176 F. Supp. 927, 932; Carqueville v. Folsom, D.C., 170 F.Supp. 777, 779, affirmed 7 Cir., 263 F.2d 875; Wray v. Folsom, D. C., 166 F.Supp. 390, 395.

20 CFR § 404.1501(b), which was in effect during the administrative proceedings before the defendant in this matter, provides as follows:[3]

"In determining whether an individual's impairment makes him unable to engage in such activity, primary consideration is given to the severity of his impairment. Consideration is also given to such other factors as the individual's education, training and work experience."

In Klimaszewski v. Flemming, supra, 176 F.Supp. at pages 931, 932, Circuit Judge Biggs, sitting by designation in the district court, said:

"The test for disability consists principally of two parts: (1) a determination of the extent of the physical or mental impairment and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity.

"As to the extent of the physical impairment, the Appeals Council decision is supported by much evidence and there is really no substantial issue of fact presented as to the nature and extent of the claimant's disability. * * *

3. It may be noted that a further regulation was adopted August 9, 1960 (25 F.R. p. 8100), reading in part as follows:

"§ 404.1502. Evaluating disability.

"(a) Whether or not an impairment in a particular case constitutes a disability, as defined in § 404.1501(a) and (b) (1) is determined from all the facts of that case. Primary consideration is given to the severity of the individual's impairment. Consideration is also given to such other factors as the individual's age, education, training and work experience. However, medical considerations alone may justify a finding that

the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or similar abnormality or combination of slight abnormalities. Also, medical considerations alone (including the physiological and psychological manifestations of aging) may justify a finding that the individual is under a disability where his impairment is one * * which would ordinarily be considered as preventing substantial gainful activity, except where other evidence rebuts a finding of 'disability,' e. g., the individual is actually engaging in substantial gainful activity."

"The next question is more difficult to answer. The Secretary lays stress on the adjective 'any' which precedes the phrase 'substantial gainful activity' and cites to the court legislative history in support of his position. However, the definition of disability cannot be considered *in vacuo*. The definition relates to the individual claimant. '[T]he act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has.' Dunn v. Folsom, D.C.W.D. Ark.1958, 166 F.Supp. 44, 48.

"The Appeals Council itself states that 'it seems clear that the claimant because of his stiff leg could not return to his stevedoring work or ordinary manual labor or work involving a great deal of walking or stooping.' It may then be inquired: What other work is available for this claimant? The Appeals Council was not specific here, but merely adjudged that his condition did not preclude the claimant from engaging in any substantial gainful activity. It is obvious that with his limited education, be it two or six years, the claimant is ill-suited for any clerical job. His earning power is limited by his strength and physical fitness. Thirty-one years as a stevedore is hardly qualification for any task which requires skilled manual dexterity or the use of figures or letters. According to the claimant's uncontroverted testimony, he is not able even to stand still for any long period of time. Of course, it may be conceded that with the use of great imagination and even greater ingenuity, conceivably a paying job might be found for Klimaszewski. The court, however, can presently perceive none and the Social Security Administration has not suggested any work for Klimaszewski except as a night watchman, or as stated in the Administration's brief, 'bench work' or some other 'employment in a light manufacturing plant.'

"Except for employment as a night watchman, which we think is not reasonably available in view of the claimant's limited ability to get about, the suggested lines of employment are cast in general terms. There is no demonstration by way of evidence or argument that this claimant is qualified for any specific employment. The claimant's proof that he is not qualified to engage in any substantial gainful activity is not adequately countered by the Administration's suggestions of possible employment.

"The word 'any' must be read in the light of what is reasonably possible, not of what is conceivable. The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It was not the intention of Congress to impose a test so severe as that required by the Secretary and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment."

In Dunn v. Folsom, D.C., 166 F.Supp. 44, 48, the court said:

"The Social Security Act, Title 42 U.S.C.A. §§ 416(i) and 423(c)(2), requires that any disability claimed arise from 'medically determinable physical or mental impairment,' and that it prevent the claimant of such disability from engaging in '*any* substantial gainful activity.' The fact that this plaintiff is illiterate and of severely limited training and experience would not itself be a physical impairment justifying a finding of disability. But the act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect

of the impairment upon that person, with whatever abilities or inabilities he has. Thus plaintiff's impairments would not prevent him from teaching courses in law, but the provisions of the act would be utterly futile if 'any substantial gainful activity' means activity utterly beyond the capacity of the particular person involved. 'Any substantial gainful activity' is such activity for which the particular claimant is reasonably qualified by education, training, or skill. Compare cases relating to 'total disability' under War Risk and National Service Life Insurance. Berry v. United States, 1941, 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945 and see Bostick v. Folsom, D.C.W.D.Ark.1957, 157 F.Supp. 108, at page 118, and cases there cited. Thus, if a medically determinable physical impairment exists, the court should consider whether such impairment prevents the particular plaintiff from engaging in any substantial gainful activity for which he is qualified, and to that end may consider his education, training, and experience, as well as the nature and extent of the impairment itself."

In Scales v. Flemming, D.C., 183 F. Supp. 710, 714, the court said:

"The defendant quite rightly notes that in other areas of law where a person claims that he is totally disabled it is up to him to bear the burden of negativing the possibility of his being employed even in types of jobs he never had tried. He has to show that he or someone else probed the labor market and found that there were no available substantial jobs for anyone with his characteristics and possibilities of rehabilitation. Cf. United States v. Still, 4 Cir., 120 F.2d 876. And surely the Social Security Administration could reasonably have put upon claimants the burden of proving that there was no market for their services. But those who drafted the regulations presumably considered that there would be inconveniences and inequities in applying to this Act the usual formula. Claimants were usually poor. Rarely did they have lawyers. Efforts to show the state of the labor market would be expensive. To require a claimant in each case to show what he had done in looking for different types of jobs might in some instances work a hardship. Therefore, the Social Security Administration's Regulation directs that after giving primary consideration to the severity of the claimant's impairment, those who pass upon his claim shall consider such other factors as the individual's education, training, and work experience."

In Aaron v. Fleming, D.C., 168 F.Supp. 291, 294, 295, Circuit Judge Rives, sitting by designation in the district court, said:

"The referee, no doubt, in defining 'disability,' placed upon the phrase 'any substantial gainful activity' an objective test, although he uses language to the contrary. But surely the test must be subjective—surely our ever-enlarging bureaucracy has not yet reached the stage of 'expertise' that it can depersonalize a person's illnesses. Subjectiveness *must* be the test, and, as stated in Jacobson v. Folsom, D.C.S.D.N.Y. 1957, 158 F.Supp. 281, 286:

"'Implicit in this criterion (of ability to engage in substantial gainful activity) is that the gainful work be commensurate with plaintiff's educational attainments, his training and experience. * * * For a man engaged in active and high pressure selling all of his adult life a transition at this late stage in life to a "white collar" job under close supervision might be unrealistic and irreconcilable with his training and experience. Furthermore, his ability to obtain such employment, in view of his selling background, might be doubtful.'

"It is further apparent that the referee gave too strict an application to 'disability.' Even though the Act is worded in strong language and the Congressional history indicates a strict policy of application, to conclude in this case that the plaintiff is not 'disabled' within the meaning of the Act would make 'disability' commensurate with 'helplessness', 'bed-ridden,' or 'at death's door.' No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties and some degree of mobility, he is not in the strictest sense unable to perform '*any* substantial gainful activity.' I do not interpret the Act to apply only to the totally helpless and bed-ridden nor to those at death's door. If a wage earner has the inability to engage in 'any substantial gainful work' which is commensurate with his education, training, experience, and physical and mental capacities, then he should be given the benefit of the 'disability freeze.' "

▮▮▮ The test as to what constitutes disability under the Social Security Act is not substantially different from that which prevailed under the War-Risk Insurance Act during World War I and therefore, the decision of the Supreme Court in Berry v. United States, 312 U.S. 450, 455, 456, 61 S.Ct. 637, 639, 85 L.Ed. 945, in which this question was discussed is persuasive. The court said:

"It was not necessary that petitioner be bedridden, wholly helpless, or that he should abandon every possible effort to work in order for the jury to find that he was totally and permanently disabled. It cannot be doubted that if petitioner had refrained from trying to do any work at all, and the same evidence of physical impairment which appears in this record had been offered, a jury could have properly found him totally and permanently disabled. And the jury could have found that his efforts to work—all of which

sooner or later resulted in failure— were made not because of his ability to work but because of his unwillingness to live a life of idleness, even though totally and permanently disabled within the meaning of his policies."

▮▮▮ To summarize, the courts have generally agreed that the test of a claimant's disability or inability to engage in any substantial gainful activity is a subjective one, that is, what is reasonably possible in the light of the plaintiff's physical and mental capacities and his education, training, and experience. It is not necessary that the plaintiff establish the complete absence of any opportunity for substantial gainful employment; he need only establish that he has become disabled from employment in any work or vocation in which he could profitably seek employment in the light of his physical and mental capacities and his education, training, and experience. Furthermore, it is clear that a plaintiff need not be totally helpless or bedridden in order to be considered disabled under the Social Security Act.

See also Kerner v. Flemming, 2 Cir., 283 F.2d 916, 921; Adams v. Flemming, 2 Cir., 276 F.2d 901, 904; Kohrs v. Flemming, 8 Cir., 272 F.2d 731, 736; Ellerman v. Flemming, D.C., 188 F.Supp. 521, 527; Harrison v. Flemming, D.C., 187 F.Supp. 358, 359; Corn v. Flemming, D.C., 184 F.Supp. 490, 493; Haxton v. Flemming, D.C., 183 F.Supp. 2, 6; Sebby v. Flemming, D.C., 183 F.Supp. 450, 454; Pruitt v. Flemming, D.C., 182 F. Supp. 159, 163; Parfenuk v. Flemming, D.C., 182 F.Supp. 532, 535, 536; Blevins v. Fleming, D.C., 180 F.Supp. 287, 293; Dean v. Flemming, D.C., 180 F.Supp. 553, 556; Lease v. Fleming, D.C., 178 F. Supp. 169, 171; Stitely v. Fleming, D.C., 178 F.Supp. 357, 359; Sobel v. Flemming, D.C., 178 F.Supp. 891, 894, 895; Jacobson v. Folsom, D.C., 158 F.Supp. 281, 286.

For cases to the contrary see Chesney v. Flemming, D.C., 180 F.Supp. 437, 439; Liles v. Flemming, D.C., 176 F.Supp. 303,

305; Fuller v. Folsom, D.C., 155 F.Supp. 349, 354.

In considering the term "disability" as used in the act, the courts have discussed the effect of some actual gainful employment during the period of claimed disability. In Julian v. Folsom, D.C., 160 F.Supp. 747, 752, 753, the court said:

"The definition of total disability (in the War Risk Insurance Act) is not dissimilar to the definition of disability used in the Social Security Act.

"In order to recover for total permanent disability under a War Risk policy it was necessary for the insured to show that he was totally and permanently disabled prior to the termination of the policy. The question frequently arose as to whether the fact that the insured had been able to do, or had actually done, work of an intermittent or sporadic nature prior to the expiration of the policy, necessarily and as a matter of law, established that he did not have a total permanent disability and thus precluded him from recovery on the policy. It was repeatedly held that such facts did not, as a matter of law, establish that total permanent disability did not exist within the necessary period, but that, as stated in Lumbra v. United States, 290 U.S. 551, 558–560, 54 S.Ct. 272, 275, 78 L.Ed. 492:

" 'The phrase "total permanent disability" is to be construed reasonably and having regard to the circumstances of each case * * *. "Total disability" does not mean helplessness or complete disability, but it includes more than that which is partial.'

"But in each case involving such facts the question presented for decision was whether or not the issue as to total permanent disability should have been submitted to the jury as the trier of the facts rather than determined as a question of law. The cases were unanimous in holding that it lay with the jury to determine whether or not the insured had been totally and permanently disabled within the required period; that the amount and character of gainful activity engaged in by the insured was to be considered by the jury with all the other evidence in determining that question; and that it was up to the jury to determine the weight and effect to be given to it. (See authorities cited). * * *

"Similarly, under the language of Section 216(i), it cannot be said in the case at bar that the facts as to plaintiff's earnings during 14 of the 21 quarters between the time of his accident and the time when he attained the age of 65, as a matter of law, negatived his 'inability to engage in any substantial gainful activity' during that period. On the other hand, such facts are plainly to be considered by the Appeals Council, the Administrative Body charged with determining the question of whether plaintiff has shown that he has such inability."

In Corn v. Flemming, supra, 184 F. Supp. at pages 493, 494, the court said:

"Similarly, the Referee on occasion referred to 'gainful activity.' This usage, and its application to the Plaintiff's case, also demonstrates a misconception of the emphasis in the Act. In Dunn v. Folsom, D.C.W.D. Ark.1958, 166 F.Supp. 44, 49, the Court correctly observed:

" 'It should also be noted that the word "substantial" as used in Secs. 416 and 423 does not modify "gainful", but rather modifies "activity". The activity in which the plaintiff must be able to engage must not only be "gainful" but it must also be "substantial". The determinative factor here is not how substantial the gain is, but how substantial the activity in which the plaintiff could gainfully engage.'

"That the Referee was using a conception of 'substantial gainful ac-

tivity' that is legally unacceptable is, furthermore, patently clear from the statements which he made during his interrogation of the plaintiff at the hearing. At one point he observed: 'Of course, the type of work I am referring to, Mr. Corn, is not where you get on *regular, steady* work, because in your condition you certainly couldn't accomplish that sort of thing'; and, at another point: 'Of course, those were things where you wouldn't work certain definite hours, and so forth. What I am inquiring about is *not* that regular, steady job of employment'. Thus, it is apparent that the Referee was considering as 'substantial gainful activity' some slight work of an irregular, spasmodic character, even though subject to frequent interruptions because of the plaintiff's pain or other characteristics of his ailment.

"As was pointed out in Lease v. Flemming, D.C.D.Md.1959, 178 F. Supp. 169, the definition of disability under the Social Security Act is substantially the same as it was under the old War Risks Claims Act from which a substantial body of authoritative precedent has been established. In a case in the Court of Appeals for the Fifth Circuit, decided under the latter Act, Ross v. United States, 5 Cir., 1931, 49 F.2d 541, 542, it was said:

" '* * * To be able "to follow any substantially gainful occupation," within the practical common-sense meaning of the phrase, *implies ability to work at it all the time.* * * *' (Emphasis supplied.)

"Similarly, following the Ross decision, the Fifth Circuit held that even the ability to engage in ' * * * employment for limited periods does not defeat recovery, if it is reasonably certain that disability beginning while the policy was in force would prevent the insured from continuously following a substantially gainful occupation.' Thus, the court held that the plaintiff was disabled to the required extent despite the opinion of one doctor that 'light employment would be beneficial' and the fact that plaintiff had worked for as much as nine months, on one occasion, during the period of alleged disability. United States v. Sanford, 5 Cir., 1934, 73 F.2d 233, 234."

The case of Adams v. Flemming, D.C., 173 F.Supp. 873, was reversed, 5 Cir., 276 F.2d 901. However, the district-court opinion contains a discussion of the legislative history of the term "disability," which was in no way criticized by the Court of Appeals. The district court said at page 879 of 173 F.Supp.:

"*Substantial gainful activity must be continuous.* If not, if it is merely sporadic and one cannot work regularly at any substantial gainful occupation, he is disabled within the meaning of the Act. The fact is there is abundant confusion, both in the legislative branch and judicial branch, over the wording of the Act, and there are many apparent contradictions in defining disability and substantial gainful activity—so much so that it is not useful to cite and trace the comments made both before and after the enactment of these disability provisions. The Act itself is sufficiently clear to this Court. The difficulty is apparent in the statements of Robert J. Myers, Chief Actuary, Social Security Administration, under questioning by the Chairman, Senator Harry F. Byrd, Committee on Finance, U. S. Senate. Hearings before the Committee on Finance, U. S. Senate, 84th Cong., 2d Sess. on H.R. 7225—the Social Security Amendments. The Social Security Administration, in an effort to answer some of Senator Byrd's questions, submitted a statement setting forth their stand on the disability freeze provisions. See Page 43 of the hearings. Therein the Department acknowledged that the concept of 'substantial gainful activity' is a *growing* one which

must be treated in each instance on the facts. The Department states on Page 43 of the hearings: 'Substantial gainful activity means the performance of substantial services with reasonable regularity in some competitive employment or self-employment. It relates to the range of activities the individual can perform * * * complete helplessness is not necessary to a finding of an allowable disability. Sporadic or infrequent activity would not necessarily establish ability to engage in substantial gainful activity.' Mr. Myers states that the definition of disability and the framework for carrying out the program under § 423 of the Act is substantially the same as it has been under § 416."

In Flemming v. Booker, 5 Cir., 283 F.2d 321, the plaintiff earned $15 to $20 a week working for a friend in a used-car lot, answering the telephone and talking to customers until the owner was available. The court said, 283 F.2d at page 324:

"The Referee found that, 'the regularity and continuity of claimant's services in the used car lot during this statutory period makes a finding of inability to engage in gainful work wholly untenable.' We do not agree. There is no reason why the rules established by the Supreme Court and by this Circuit in connection with other statutes should not be here applicable. In Berry v. United States, 1941, 312 U.S. 450, 455, 456, 61 S.Ct. 637, 639, 85 L.Ed. 945, Mr. Justice Black, speaking for a unanimous Court, said:

" 'It was not necessary that petitioner be bedridden, wholly helpless, or that he should abandon every possible effort to work in order for the jury to find that he was totally and permanently disabled. It cannot be doubted that if petitioner had refrained from trying to do any work at all, and the same evidence of physical impairment which appears in this record had been offered, a jury could have properly found him totally and permanently disabled. And the jury could have found that his efforts to work—all of which sooner or later resulted in failure—were made not because of his ability to work but because of his unwillingness to live a life of idleness, even though totally and permanently disabled within the meaning of his policies.'

"In Mabry v. Travelers Ins. Co., 5 Cir., 1952, 193 F.2d 497, 498, Judge Holmes, for this Circuit, said:

" 'Pinched by poverty, beset by adversity, driven by necessity, one may work to keep the wolf away from the door though not physically able to work; and, under the law in this case, the fact that the woman worked to earn her living did not prevent a jury from finding, from the evidence before it, that she was totally and permanently disabled even while working.'

"Moreover, the inability must be 'to engage in any *substantial gainful activity*' * * *. Booker's total yearly earnings in the used car lot must have been less than $1,000.00, and that does not measure up to the Department's policy as described in a report submitted to the House Committee on Ways and Means by the Subcommittee on the Administration of the Social Security Laws on March 9, 1960:

" 'Present Department policy in interpreting the effect of earnings on a finding of "substantial gainful activity" is found in the confidential manual, which states that if an individual earns over $1,200 a year he is engaging in "substantial gainful activity" in "absence of evidence to the contrary." The binding nature of this guide is shown by the fact that, upon subcommittee request, a survey was undertaken which showed that no disability beneficiary was maintained on the rolls after he demonstrated an earning capacity of

more than $1,200 a year in competitive nonsubsidized employment.' "

The foregoing well-reasoned authorities clearly establish the rule that the fact that a claimant may have had some gains from intermittent or sporadic employment does not necessarily bar him from establishing disability under the Social Security Act. Furthermore, the fact that a claimant was willing to engage in employment rather than remain idle during the period of his claimed disability does not preclude recovery of disability insurance benefits under the act.

See also Sebby v. Flemming, D.C., 183 F.Supp. 450, 455, where evidence that the plaintiff engaged in some farming and household work did not bar him from disability benefits; Sisia v. Flemming, D.C., 183 F.Supp. 194, 200, where evidence that the plaintiff had earned about $4,000 during the course of four years did not bar her from disability benefits; Haxton v. Flemming, D.C., 183 F.Supp. 2, 6, where evidence that the plaintiff had acted as cashier in her brother's butcher shop on Saturday afternoons for one summer did not bar disability benefits; Pruitt v. Flemming, D.C., 182 F.Supp. 159, 164, where evidence that the plaintiff had been employed as a watchman and as a weighman over several months did not bar disability benefits; Sobel v. Flemming, D.C., 178 F.Supp. 891, 895, where evidence that the plaintiff had engaged in light household tasks did not bar disability benefits; and Leath v. Flemming, D.C., 191 F.Supp. 577, where evidence that the plaintiff had engaged in light yard work and drove an automobile did not bar disability benefits. Contra, see Hallard v. Fleming, D.C., 167 F.Supp. 205, 208, 209.

The plaintiff's medical evidence in the present case may be summarized as follows: He now suffers, and for many years has suffered, from chronic bronchial asthma, intrinsic type, and chronic sinusitis. Acute attacks occur, which are intermittent in nature and are aggravated by dust or fumes. He is completely incapacitated and disabled at the time of his acute attacks, and use of the drugs adrenalin and ephedrine afford him only temporary relief. He also suffers from emphysema and dyspnea upon moderate exertion. He was treated for a herniated disc in 1945. The medical evidence indicated that he could probably perform sedentary or light tasks in his home or in a place free from dust or fumes. In discussing plaintiff's disability in his report Dr. Kempter said: "From his history I would judge that he is incapacitated and disabled at the time of acute attacks and it would probably be impossible for him to hold down a steady job away from home environment. There are a number of sedentary tasks that he could probably perform at home or in a situation that did not require his constant and steady employment." Dr. Jameson, who examined plaintiff on several occasions, stated that he agreed with Dr. Kempter's report and finding as to plaintiff's physical condition and ability to work.

It is clear that the plaintiff suffers from a medically determinable physical impairment, and the defendant's referee found that his health had been impaired due to asthma. However, the referee concluded that his physical impairment was not so severe as to render him unable to engage in substantial gainful activity. Therefore, the question this court must determine is whether the referee's conclusion is supported by substantial evidence and whether it is based on the proper legal standard for the term disability. In his decision the referee stated:

"The medical evidence submitted shows that claimant's health has been impaired due to asthma. Although his condition may interfere with the full performance of his usual work or other work requiring strenuous physical effort, it has not so severely affected his overall ability as to make him unable to do any type of substantial gainful work."

This legal standard applied by the referee is not correct. The authorities hereinbefore cited and quoted clearly indicate that the plaintiff is only

required to establish that he is incapable of carrying on any type of substantial gainful activity for which he is qualified by education, training, and experience. The evidence establishes that plaintiff was laid off from his last place of employment due to his physical impairment and that his subsequent applications for employment have been rejected for the same reason. The medical evidence establishes that plaintiff cannot engage in steady employment involving physical exertion. While expert medical evidence is not conclusive upon the legal question of disability, it is to be considered, and where it is not controverted by substantial evidence to the contrary, it is entitled to great weight. See Kohrs v. Flemming, 8 Cir., 272 F.2d 731, 736; Teeter v. Flemming, 7 Cir., 270 F.2d 871, 874; Jacobson v. Flemming, D.C., 186 F.Supp. 936, 937; Blevins v. Fleming, D.C., 180 F.Supp. 287, 292; Hill v. Fleming, D.C., 169 F.Supp. 240, 245.

While the medical evidence indicates that the plaintiff would probably be able to engage in sedentary or light work in his home environment, there is no evidence that he has the education, training or experience to obtain or to engage in that type of work. The evidence shows that he has tried to repair television sets for his neighbors but that he has been unsuccessful in that endeavor. There is no evidence indicating that he is able to obtain employment or to engage in any substantial gainful activity for which his eighth-grade education, his training, and his limited experience have prepared him.

 In his decision the referee stated: "The daily activities of the claimant would not appear to be those of a totally disabled individual." The law does not require that plaintiff show that he is bedridden or completely helpless or that he is *totally* disabled, in order to qualify for disability benefits. The mere fact that he is mobile and is able to engage in some light tasks at his home does not alone establish that he is able to engage in substantial gainful activity. Certainly the fact that plaintiff has made sincere efforts to engage in some gainful employment but has not succeeded because of his physical condition should not bar him from the benefits provided by the act.

The plaintiff received unemployment benefits for the maximum period of 28 weeks, and he is still ready and willing to accept any offer of employment which may be made to him. The fact is that no offer of employment has been made to him, and because of his physical condition he has been unable to obtain employment. Considering his impaired physical condition and his limited education, training, and experience, it seems unlikely that any offers of employment will be made to him or that he will obtain any substantial gainful employment in the future. There is no evidence whatever to support the referee's statement that the plaintiff is unemployed because of economic conditions. The evidence clearly indicates that plaintiff is unable to secure employment because of his physical impairment.

The referee further found that the plaintiff's impairment was not so severe as ordinarily to be disabling. Whether or not an ordinary person would be disabled by the plaintiff's impairment is immaterial to the question of whether the plaintiff himself is disabled. The determination as to whether plaintiff is disabled must be subjective. From consideration of the entire record and medical evidence, it is clear that plaintiff's medically determined impairment, in the light of his limited education, training, and experience, has rendered him unable to engage in any substantial gainful activity.

 The court concludes that the decision of the referee is based upon a misunderstanding or wrong conception of the applicable law and that his decision is not supported by substantial evidence and should, therefore, be reversed.

There is substantial evidence that the plaintiff was disabled at the time of the hearing before the referee in June, 1959, and under the test of reasonableness of proof stated in Sisia v. Flemming, D.C., 183 F.Supp. 194, 199, the court concludes

that the evidence reasonably establishes that he was disabled on September 30, 1955, and that he is entitled to disability insurance benefits under the Social Security Act.

Therefore, the defendant's motion for a summary judgment is denied; the decision of the referee is reversed; and this matter is remanded to the Secretary of Health, Education, and Welfare, with directions that plaintiff be granted a period of disability and disability insurance benefits in accordance with the Social Security Act. An order will be entered in accordance with this opinion.